Merrimack
No. 2002-098

### IN RE JUVENILE 2002-098

Argued: October 17, 2002
Opinion Issued: December 20, 2002

*John D. MacIntosh, P.C.*, of Concord (*John D. MacIntosh* on the brief and orally, for the petitioners, Paul and Karen VanDenBerg.

*Moir and Brodich, P.A.*, of Concord (*Nicholas Brodich* on the brief and orally), for the respondent, Stefan K.

*Katherine B. Stearns*, of New London, by brief and orally, for the respondent, Aranka D.

*Abramson, Bailinson & O'Leary, P.C.,* of Manchester (*Ronald L. Abramson* on the brief and orally), for the juvenile.

*Philip T. McLaughlin,* attorney general (*Ann F. Larney,* associate attorney general, on the brief) for the State.

*David N. Sandberg,* of Manchester, by memorandum, for Court Appointed Special Advocates of New Hampshire, Inc., guardian ad litem for the juvenile.

*Darryl L. Hamm,* of Oakland, California, by brief, for the National Center For Youth Law & a., as *amici curiae.*

NADEAU, J. This case comes before us on an interlocutory transfer without ruling from the Superior Court (*Fitzgerald,* J.) for a determination of whether the district court had jurisdiction over an abuse and neglect case involving a juvenile nonresident foreign national, and whether the court's jurisdiction could be invoked to obtain special immigration juvenile status under federal law. *See* SUP. CT. R. 9. We hold that the court had jurisdiction and that it could be used in furtherance of obtaining special immigration juvenile status.

The following facts are stated in the interlocutory transfer statement, *see id.,* or appear in the record. Petitioner Paul VanDenBerg first met the juvenile while working in Brasov, Romania with a foundation assisting homeless children. The juvenile is a Romanian citizen, as are her parents, respondents Stefan K. and Aranka D. Neither Stefan K. nor Aranka D. has ever been in the United States.

In February 1999, VanDenBerg helped the juvenile, with her parents' permission, obtain a visitor's visa to the United States. The juvenile stayed with VanDenBerg and his wife, petitioner Karen VanDenBerg, in Newbury, New Hampshire, for the six-month duration of her visa. The juvenile returned to Romania at the end of that period.

The juvenile, with VanDenBerg's assistance, obtained another visitor's visa in May 2000 and again stayed with the VanDenBergs. She did not, however, return to Romania at the expiration of her visa on or about November 1, 2000. Rather, the VanDenBergs and the juvenile discovered in the summer and fall of 2000 that a provision of the Federal Immigration and Naturalization Act (INA) might permit the juvenile to remain in the United States by obtaining "special immigration juvenile status." Specifically, 8 U.S.C. § 1101(a)(27) (2000) defines the term "special immigrant" to include:

(J) an immigrant who is present in the United States —

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Attorney General expressly consents to the dependency order serving as a precondition to the grant of special immigrant juvenile status; except that —

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter . . . .

On November 20, 2000, the VanDenBergs filed, in the New London District Court, an abuse and neglect petition under the Child Protection Act, RSA chapter 169-C. The petition, as amended, alleged that the juvenile was both abused and neglected within the meaning of the Child Protection Act, as she had been, among other things, beaten by both of her parents and abandoned by them, forcing her, at times, to live on the streets of Brasov or in its sewers.

After a preliminary hearing, the District Court (*McSwiney*, J.) ruled that it had jurisdiction to hear the petition and that there was reasonable cause to believe that the juvenile had been abused and neglected. The court also appointed counsel for the juvenile, Stefan K. and Aranka D. respectively. Following an adjudicatory hearing, the court again held that it had jurisdiction and that the juvenile had been both abused and neglected within the meaning of the Child Protection Act. The court further found the juvenile to be dependent upon the court within the meaning of 8 U.S.C. § 1101(a)(27)(J). In a later dispositional order, the court found that "[a]lthough a final decision must await the outcome of the PACE evaluation and the actions of [the juvenile's] parents, [she] is

eligible for long-term foster care." The court also found that "[a]t the present time it is not in [the juvenile's] best interest to be returned to Romania."

The case was appealed to the superior court. *See* RSA 169-C:28 (2002). The parents moved to dismiss the matter for lack of jurisdiction, raising the question, as stated by the trial court:

> Whether a New Hampshire Court, pursuant to New Hampshire's Child Protection Act (R.S.A. 169-C), has jurisdiction over a juvenile who is a nonresident foreign national but now physically present in the State of New Hampshire, and the respondents are nonresident foreign nationals who have never been present in the United States, and the alleged abuse and neglect occurred outside of New Hampshire and these United States prior to the juvenile's entry into the United States.

The trial court transferred the question to this court as an interlocutory transfer without ruling pursuant to Supreme Court Rule 9. The court later transferred an additional question: "Can the petitioners and the juvenile invoke the jurisdiction of the district court under RSA Ch. 169-C in order to secure protection from deportation under specific provisions of federal law (8 U.S.C. § 1101 (a) (27) (J)[)] granting to her a 'special immigration juvenile status' visa?"

Notwithstanding the trial court's reference in the first question to "jurisdiction over [the] juvenile," we understand the question to ask whether the district court had subject matter jurisdiction over the case, not personal jurisdiction over either the juvenile or her parents. Accordingly, we address only that narrow question.

■ RSA 169-C:4, I (2002) provides that "[t]he [district] court shall have exclusive original jurisdiction over all proceedings alleging the abuse or neglect of a child." *See also* RSA 169-C:3, IX (2002). Under a prior statute dealing with neglected and delinquent children, we held that "[t]he jurisdiction of the juvenile court is not limited to those who reside or have their domicile in this state but applies to any neglected or delinquent child found within the state." *In re Poulin*, 100 N.H. 458, 461 (1957) (citing RSA 169:2). We similarly now hold that RSA 169-C:4, I, confers jurisdiction to the district court over any case involving a child found within the State who is alleged to have been abused or neglected, no matter where the abuse or neglect is alleged to have occurred. *Cf. In re Noah W.*, 131 N.H. 53, 56 (1988).

While Stefan K. correctly points out that RSA 169-C:5, I (2002), providing that "[p]roceedings under this chapter may be originated in the

judicial district in which the child is found or resides," deals with venue rather than jurisdiction, we do not base our holding upon that provision. Rather, we rely upon the broad language of RSA 169-C:4, I, and the traditional *parens patriae* power of the State.

We have long recognized the State's *parens patriae* interest in the welfare of children within its jurisdiction. *See, e.g., Preston v. Mercieri*, 133 N.H. 36, 40 (1990). Thus, regarding the power to adjudicate the custody of a child, we have stated:

> The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. For this, the residence of the child suffices though the domicile be elsewhere. Furthermore, since the welfare of the child is the controlling consideration and since it is not chargeable with its parent's misconduct, this jurisdiction will be exercised even though the child was brought to this state by its parent fraudulently, and for the purpose of conferring jurisdiction over the question of custody, provided, however, that the child is, as in this case, too young to decide what is best for its own welfare.

*Sheehy v. Sheehy*, 88 N.H. 223, 225 (1936) (quotation, citation and ellipsis omitted).

█ We are also not persuaded by Stefan K.'s contention that a finding of jurisdiction in this case would undermine the purposes of the Child Protection Act, including those of keeping families together and providing assistance to parents. *See* RSA 169-C:2 (2002). We acknowledge the difficulties occasioned by the residence of the parents in a foreign country and the language and cultural barriers involved in this case. Nevertheless, "the welfare of an allegedly abused or neglected child is of paramount importance under RSA chapter 169-C." *In re Bill F.*, 145 N.H. 267, 274 (2000). Accordingly, we conclude that the obstacles to reunification present in this case do not divest the district court of the power to protect a child found within the State through the exercise of jurisdiction conferred by RSA 169-C:4, I. We answer the first transferred question, therefore, in the affirmative.

█ The second transferred question deals with the relationship between the district court's jurisdiction under RSA chapter 169-C and special immigration juvenile status under 8 U.S.C. § 1101(a)(27)(J). We find nothing in 8 U.S.C. § 1101(a)(27)(J) to bar or preempt jurisdiction in this case.

As a general matter, "the INA specifically delegates determinations of dependency, eligibility for long-term foster care, and the best interest of the child to state juvenile courts." *Gao v. Jenifer*, 185 F.3d 548, 555 (6th Cir. 1999). Thus, "[t]he INA *generally relies* on state courts, acting in their usual course." *Id.* The only challenge to the district court's jurisdiction based upon the INA that has been raised before us is Stefan K.'s assertion that the juvenile was in the constructive custody of the Immigration and Naturalization Service (INS) once her visa expired, and that therefore the Attorney General's consent to jurisdiction was required under 8 U.S.C. § 1101(a)(27)(J)(iii)(I). Stefan K. cites no precedent in support of this assertion, however.

The record reveals that the INS was contacted by DCYF regarding the juvenile and "determined not to commence Removal proceedings at th[at] time, but to await the outcome of [the district] court proceedings." Moreover, the record discloses that the juvenile has already been granted permanent resident status by the INS. Thus, we find nothing before us to indicate that the juvenile was ever in the actual or constructive custody of the INS. Accordingly, we answer the second transferred question in the affirmative.

*Remanded.*

DALIANIS and DUGGAN, JJ., concurred.