Melissa Lee WEST  *v.*  James Edward WEST

04-393                                                     216 S.W.3d 557

Supreme Court of Arkansas
Opinion delivered November 3, 2005

[Rehearing denied December 15, 2005.*]

---

* GUNTER, J., not participating.

*Fredye Long Alford*, for appellant.

*Scott S. Freydl*, for appellee.

ROBERT L. BROWN, Justice. Appellant Melissa West appeals from the circuit court's initial order retaining exclusive, continuing jurisdiction over the parties and subject matter under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Melissa West further appeals the court's subsequent order continuing joint custody of the children but awarding primary physical custody of the female child, N.W., to herself and awarding primary physical custody of the male child, J.W., to the appellee, James Edward West. Her sole point on appeal is that the circuit court erred in concluding that it had exclusive, continuing subject-matter jurisdiction to determine a modification of a previous Arkansas custody order under the UCCJEA. We affirm the circuit court.

On July 10, 2000, a divorce decree for Melissa West and James Edward West was entered.[1] In that decree, the chancery court ordered that Melissa and James Edward would have joint custody of the two children. It further awarded Melissa West the exclusive right to determine the primary residence of the children and awarded James Edward certain rights of visitation when the two parents resided 300 miles or more from each other.

On June 11, 2003, James Edward filed a motion for change of custody in what is now the circuit court due to the approval of Amendment 80 to the Arkansas Constitution. The motion alleged that since the date of the decree, there had been a material change of circumstances and specifically that (1) Melissa was openly cohabitating with her live-in boyfriend in the presence of the two children; (2) that Melissa had used inappropriate disciplining measures on the children; (3) that Melissa had moved her residence three times within the last three years; (4) that Melissa maintained a dirty and unkept living environment and that the children arrived for visitation in unwashed and dirty clothes; (5) that Melissa's electrical service had been shut off four or five times since the divorce; and (6) that the children had expressed a strong desire to live with James Edward. James Edward asserted that in addition to these reasons, he had remarried and that he and his wife could offer two steady incomes to pay for the children's needs. For these reasons, he contended that it was in the best interest of the children for them to be placed in his sole custody.

On July 9, 2003, Melissa moved to dismiss James Edwards's motion for lack of subject-matter jurisdiction. She stated that the children had resided in the state of Oregon with her since July 2000, and that six months from that date, Oregon became the children's home state. She further stated that all of the children's school and medical records were in Oregon. She contended that under the UCCJEA, the circuit court no longer had exclusive, continuing jurisdiction over the children, and for that reason, the court should dismiss the pending motion. She further denied the allegations in the change-of-custody motion.

---

[1] The divorce decree and motion for change of custody are included in Melissa's revised Addendum but are not in the record. Appellee James Edward West makes no objection to this. We treat this as an agreement regarding the decree and motion and as an abbreviated record under Arkansas Rule of Appellate Procedure – Civil 6(c) (2005).

On July 21, 2003, the circuit court held a hearing on the issue of subject-matter jurisdiction. After hearing the testimony of both Melissa and James Edward and hearing the arguments of counsel, the circuit court ruled:

> I've listened to all of the evidence and I, also, read the cases from the other jurisdictions, as well as, those from the State of Arkansas, regarding the UCCJEA, and I've had this issue come up a number of times since the enactment of the UCCJEA. In ruling, I am ruling that Arkansas will retain jurisdiction of this case. I do recognize that the home state would be, at this time, considered to be the State of Oregon instead of the State of Arkansas, because the child has resided there for in excess of six months — or children. The children are now eleven and almost fourteen years of age. They have spent a majority of their lifetime in the State of Arkansas and Arkansas had previously entered an order regarding custody. UCCJEA does require the Court to consider whether or not there are significant relationships or contacts or evidence, as I interpret it, with the State of Arkansas. I think that there are more than enough significant contacts, here, still, at the present time, and have been since the mother and the children have moved to the State of Oregon. Up to twenty-five percent — and I think that it's a question of whether or not there are significant contacts, not the question of whether or not there are more, and I think that's the issue that has to be considered by the Court. There are significant contacts and relationships and evidence in the State of Arkansas. The child spends somewhere between twenty and twenty-five percent of its time in — children spend twenty to twenty-five percent of their time in the State of Arkansas. The father and his family live here. He's remarried. The college classes, Karate and other things, and therefore, I am going to retain jurisdiction of this matter at the present time. I'm going to recess until 1:15 and we will have a temporary hearing after lunch, rather than starting it at this time.

On September 2, 2003, a hearing was then held on the merits of the motion to change custody. Following the testimony by the witnesses and the arguments of counsel, the circuit court issued its final order on September 18, 2003. In that order, the circuit court reiterated and reaffirmed its finding of exclusive, continuing jurisdiction pursuant to the UCCJEA. It further found a material and significant change in circumstance and relied on the following facts to support that finding: (1) that Melissa moved to Oregon after the divorce; (2) the desires of both children as stated

during the hearing; (3) that James Edward had remarried; and (4) that Melissa had been cohabitating with a man for more than two years. The court concluded that it was in the best interest of the children for Melissa and James Edward to continue sharing joint custody, but the court ordered that Melissa be the primary physical custodian of N.W. and James Edward be the primary physical custodian of J.W., subject to visitation.

Melissa initially contends in this appeal that under the UCCJEA, the children's home state is now Oregon and that that is the preferred jurisdiction. She asserts that court-ordered visitation and any activities occurring within that time period of visitation, standing alone, cannot be deemed sufficient to sustain a finding of a significant connection to the original-decree state. She maintains that all the children's school records, medical records, and a substantial extended family exist only in Oregon. She cites to other jurisdictions to support her proposition that Oregon has long been the home state of the children and urges that Oregon is preferred under the UCCJEA and can only be overcome for jurisdiction purposes by a showing and finding of "significant connections" and "substantial evidence."

■ Our standard of review in this case is *de novo*, although we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See Arkansas Dep't of Human Servs. v. Cox*, 349 Ark. 205, 82 S.W.3d 806 (2002).

■■ The UCCJEA is the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings which involve other jurisdictions. *See Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003). One of the purposes behind the UCCJEA is to avoid relitigation of child-custody determinations in other states. *See Arkansas Dep't of Human Servs. v. Cox, supra*. The specific section of the UCCJEA at issue in the instant case provides in pertinent part:

> (a) Except as otherwise provided in § 9-19-204, a court of this state which has made a child-custody determination consistent with § 9-19-201 or § 9-19-203 has exclusive, continuing jurisdiction over the determination until:

> (1) a court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substan-

tial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Ark. Code Ann. § 9-19-202(a) (Repl. 2002).

██ In the instant case, the divorce decree indicates that the Arkansas trial court entered the parties' initial divorce decree and award of custody. Thus, the Arkansas court had exclusive, continuing jurisdiction over the child-custody determination until the court made either of the two determinations set forth in § 9-19-202(a).

In support of her argument that the circuit court does not have exclusive, continuing subject-matter jurisdiction, Melissa relies on four cases: *In Re: C.C.B. & M.J.B.*, No. 08-01-00353-CV (Tex. Ct. App. Dec. 5, 2002); *In Re: M.B. II*, 756 N.Y.S.2d 710 (N.Y. Fam. Ct. 2002); *In Re: Marriage of Medill*, 179 Or. App. 630, 40 P.3d 1087 (2002); and *In Re: Bellamy*, 67 S.W.3d 482 (Tex. Ct. App. 2002). While each case cited deals with the UCCJEA, each one is distinguishable on the facts, and none is persuasive.

██ The case of *In Re: C.C.B. & M.J.B.*, *supra*, is an *unpublished* opinion from the Texas Court of Appeals, which has no precedential value.[2] Moreover, there is no discussion in that case of any continuing contacts of the children with the State of Texas, which was the original jurisdiction for the divorce. Thus, the case is inapposite.

██ In *In Re: M.B. II*, *supra*, the Family Court of Nassau County, New York, granted a father's motion to dismiss the mother's petition for modification of custody. In that case, the couple received a divorce from the New York court, and the father moved to New Jersey with the child. The mother moved to modify the parties' agreement as to custody, and the court found that the child and his father had resided in New Jersey continually for three years, that the child attended school there, and that the

---

[2] This case was later disapproved by *In Re: Forlenza*, 140 S.W.3d 373 (Tex. 2004), which is discussed later in this opinion.

child had his friends there. While the mother claimed that the child had attended a family member's communion service in New York seven months prior, that the child had various family members in the Nassau County area, that the father "maintained" a former marital residence there, and that it would be a burden on her for New Jersey to hear the matter, the court observed that the contacts alleged by the mother between the child and New York were "*de minimis* at best and virtually non-existent at worst." 756 N.Y.S.2d at 194. The court then found that the child and one parent had no significant connection with New York and that substantial evidence was no longer available there. Accordingly, it declined jurisdiction of the matter. The facts supporting a significant connection with Arkansas in the instant case are categorically different.

■ In *In Re: Marriage of Medill, supra*, the father appealed from the trial court's dismissal of his motion to modify child custody. At the time of the parents' divorce, the parties agreed that the father would file the dissolution action in Oregon. An Oregon court issued the dissolution with the mother's consent, which included a parenting plan. The mother and the children remained in Germany, where they had moved prior to the divorce. In 1999, the father filed the instant motion in the Oregon trial court, which the trial court dismissed, on the basis that Oregon was not and never had been the children's home state for purposes of either the Uniform Child Custody Jurisdiction Act (UCCJA) or the UCCJEA and the children had no significant connection with Oregon. Those facts are not analogous to the case at hand.

■ Finally, Melissa attempts to distinguish *In Re: Bellamy, supra*, a Texas Court of Appeals case. There, the court examined the mother's claim that the Texas court lacked subject-matter jurisdiction over the custody matter, because she and the child resided in Louisiana. The court of appeals disagreed and noted that under Texas law, which had adopted the UCCJEA, Texas retained jurisdiction if a parent remained in Texas, regardless of the child's home state, so long as there was still a significant connection with Texas and substantial evidence was still available in Texas. The court held that the trial court properly exercised jurisdiction, as the child's father remained in Texas and the children maintained a significant connection with that state.

A case that is apposite to the instant case is *In Re: Forlenza*, 140 S.W.3d 373 (Tex. 2004). In that case, the Texas Supreme Court examined whether in the modification-of-custody suit before it, the children maintained a significant connection with Texas so that the initial trial court retained jurisdiction of the matter under the UCCJEA.[3] The court observed that the parties divorced in Texas in 1996, and in 1997, the trial court signed a modification order regarding custody. The children then moved with their father to Washington and, subsequently, to three other states. The mother filed a motion to modify the custody agreement, and the father moved to dismiss alleging that the trial court did not have exclusive, continuing jurisdiction to modify the previous child-custody order. The trial court denied the motion, and the Texas Court of Appeals ordered the trial court to vacate its previous order and to dismiss the case. The supreme court granted the mother's petition to determine whether the trial court retained exclusive, continuing jurisdiction under the UCCJEA. The father's primary argument was that the children no longer had a significant connection with Texas because the children had only visited Texas five times in the four-year period preceding the action and because the mother's residence in Texas was not sufficient.

The Texas Supreme Court disagreed with the father and noted that the record reflected that the children had visited Texas six times in the relevant period. On four of those visits, they lived with their mother for approximately one month during the summer and would have visited the state more but for the father's actions and the fact that the children were not allowed to fly to Texas. The court further pointed to the fact that numerous relatives lived in Texas and maintained a relationship with the children, including their maternal grandmother and their mother's sister, and their father's sister and sister-in-law. In addition, the court said that the evidence clearly indicated that the mother maintained a significant relationship with her children and that to accommodate the children's schedules, she flew to their various states of residence to see them at least on fifteen occasions in the four-year period. The court concluded that because "the record establishes that the children visited Texas on a number of occasions

---

[3] The Texas statute at issue, which adopts the UCCJEA, is similar to § 9-19-202(a) of our Code.

and maintained a close relationship with their mother and other relatives residing in Texas, all important considerations under the UCCJEA, we hold that the children have a significant connection with Texas sufficient to support the trial court's exclusive continuing jurisdiction over the modification proceedings." 140 S.W.3d at 377.

The same analysis applies to the instant case. We turn first to whether the children have a significant connection to Arkansas. The testimony presented to the circuit court at the hearing on Melissa's motion reveals that since the parties' divorce, the children had spent three summer breaks, one spring break, and three Christmas breaks with James Edward in Arkansas. The summer-break visits lasted for ten weeks. Looking at all visits, the children spend a minimum of twelve weeks each year in this state. In addition to their father, the children's maternal grandmother resides in Arkansas, as do their stepmother, stepbrother, and step-grandparents. Because the children's father continues to reside in the state, and the children do spend at least twenty percent of their time in the state, and multiple relatives reside here, we cannot say that the children do not have a significant connection with the state which would require the circuit court to relinquish jurisdiction. Such a finding is sufficient to affirm the circuit court's decision under *In Re: Forlenza, supra*, and Ark. Code Ann. § 9-19-202(a), in that it appears a circuit court must find *both* that a significant connection *and* substantial evidence do not exist in order to lose jurisdiction. Because we hold that a sufficient connection between the children and this state does exist, we need not address the issue of substantial evidence regarding the children's care.

While Melissa argues that findings in relation to § 9-19-202(a)(1) should not be sufficient when based solely upon court-ordered visitation, her argument is meritless. First and foremost, Melissa fails to cite to any authority from this court or any other court for the proposition that court-ordered visitation to the state at issue should not be considered when determining whether a significant connection exists. This court does not consider arguments made without citation to authority or convincing argument. *See, e.g., Rose v. Arkansas State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005). Furthermore, the language used

in § 9-19-202(a)(1) is clear and does not in any way prohibit the consideration of evidence based upon court-ordered visitation.

Affirmed.

GUNTER, J., not participating.