307 P.3d 1003

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY,**
Petitioner,

v.

**The Honorable Larry GRANT, Judge of the Superior Court of the State of Arizona, in and for the COUNTY of MARICOPA, Respondent Judge,**

**Angie P.; Devin P.; K.P.; K.P., Real Parties in Interest.**

**No. 1 CA–SA 13–0147.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 15, 2013.

Thomas C. Horne, Attorney General by Dawn R. Williams, Assistant Attorney General, Phoenix, Tucson, Attorneys for Petitioner.

Law Office of Lynn Pucino by Lynn Pucino, Phoenix, Attorney for Real Party in Interest Devin P.

Law Office of Sara J. Smith, PLLC by Sara Smith, Goodyear, Attorney for Real Party in Interest Angie P.

Law Office of Iris Garcia Maes Phoenix by Iris G. Maes, Phoenix, Guardian ad Litem for Real Parties in Interest K.P. and K.P.

## OPINION

PORTLEY, Judge.

¶ 1 The Arizona Department of Economic Security ("ADES") challenges the dismissal of a dependency petition based on lack of jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"),[1] codified in Arizona Revised Statutes ("A.R.S.") sections 25–1001 to 25–1067 (West 2013). Because we find that the juvenile court has jurisdiction, we accept special action jurisdiction and grant relief.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Angie P. ("Mother") and Devin P. ("Father") (collectively "Parents"), Real Parties in Interest, are the parents of two children. The U.S. Air Force transferred Father from Japan to Luke Air Force Base, and he and his family relocated to Arizona. One month later, ADES received a report from military authorities in Japan that the children had allegedly been abused and neglected by their parents. After receiving the report, ADES contacted local law enforcement and local military authorities, and implemented a safety plan. Parents, however, did not comply, and ADES subsequently removed the children from Parents' care, placed them in temporary foster care, and filed a dependency petition.

---

1. "The UCCJEA is a uniform statute that has been adopted by forty-five states, including Arizona[,] ... to create consistency in interstate child custody jurisdiction and enforcement proceedings." *Melgar v. Campo*, 215 Ariz. 605, 606, ¶ 7, 161 P.3d 1269, 1270 (App.2007).

¶ 3 Following the preliminary protective hearing, Parents requested a temporary custody hearing. At that hearing, the juvenile court received testimony from Parents and a Child Protective Services ("CPS") investigator, and an ADES report and other documents were admitted as exhibits. Following a recess, the court determined it lacked jurisdiction over the case because the petition "refer[red] to events that allegedly occurred in Japan, not in the state of Arizona." The court then dismissed the dependency action, and ADES filed this special action petition. We previously stayed the dismissal of the dependency and return of the children to Parents pending the resolution of this special action.

## SPECIAL ACTION JURISDICTION

¶ 4 We have discretion to accept special action jurisdiction, *Potter v. Vanderpool*, 225 Ariz. 495, 498, ¶ 6, 240 P.3d 1257, 1260 (App.2010), and will accept jurisdiction if a petitioner does not have an "equally plain, speedy, and adequate remedy by appeal," Ariz. R.P. Spec. Actions 1(a), or "if a case presents an issue of first impression and one of statewide importance that is likely to recur." *Gray v. Irwin*, 195 Ariz. 273, 275, ¶ 5, 987 P.2d 759, 761 (App.1999); *Ariz. Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, 75, ¶ 1, 22 P.3d 513, 514 (App.2001). And, the issue of whether a court has jurisdiction under the UCCJEA despite the children's presence in Arizona for less than six months "is of first impression, has statewide importance, and is likely to recur." *Welch–Doden v. Roberts*, 202 Ariz. 201, 204, ¶ 10, 42 P.3d 1166, 1169 (App.2002). Consequently, we exercise our discretion and accept jurisdiction.

## DISCUSSION

¶ 5 ADES asserts that the juvenile court erred by finding that it did not have jurisdiction over its dependency petition. We review the "decision to dismiss a case for lack of jurisdiction" de novo. *Guminski v. Ariz. State Veterinary Med. Examining Bd.*, 201 Ariz. 180, 182, ¶ 9, 33 P.3d 514, 516 (App.2001). We also review "this matter de novo because it involves a matter of statutory interpretation." *Melgar*, 215 Ariz. at 606,

¶ 6, 161 P.3d at 1270 (citing *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 233, ¶ 8, 119 P.3d 1034, 1036 (App.2005)).

### I.

¶ 6 The UCCJEA provides that a court "has jurisdiction to make an initial child custody determination" if any of the following are true:

1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

2. A court of another state does not have jurisdiction under paragraph 1 ... and both of the following are true:

(a) The child and the child's parents ... have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.

3. All courts having jurisdiction under paragraph 1 or 2 have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 25–1037 or 25–1038.

4. A court of any other state would not have jurisdiction under the criteria specified in paragraph 1, 2 or 3.

A.R.S. § 25–1031(A) (West 2013).

¶ 7 As we stated in the dependency case of *Willie G.*, "[a]n Arizona court has jurisdiction to make an initial child custody determination if Arizona is the home state of the child on the date of the commencement of the proceedings" or "if no other state would have jurisdiction under any alternative criteria specified in § 25–1031(A)(1), (2), or (3)." 211 Ariz. at 234, ¶ 11, 119 P.3d at 1037 (internal quotation marks omitted). Here, although the children are living in Arizona with their parents, they technically do not have a "home state" as defined by § 25–1031(A)(1). *See Welch–Doden*, 202 Ariz. at 204, ¶ 15, 42

P.3d at 1169 ("Section 25–1031 is the statutory starting place for determining initial jurisdiction."). The children were born in Texas, moved to Japan with their parents in 2010, and, when the military assigned Father to Luke Air Force Base, the family moved to Arizona in March 2013. Consequently, though Texas was the children's home state while they were living in Japan pursuant to A.R.S. § 25–1013 (West 2013) (explaining that when a child's custodial parent is stationed by the military "outside of the United States and the child is relocated outside of the United States during the deployment," the child's home state "at the time of the military deployment ... remains the home state of the child *until the deployment ends*") (emphasis added), that relationship ended once Father brought his family to Arizona.

¶ 8 Arizona was not technically the children's home state because they had not lived here for six consecutive months before ADES filed the dependency petition. *See* A.R.S. § 25–1002(7) (West 2013) (explaining that "home state" means "[t]he state in which a child lived with a parent ... *for at least six consecutive months* immediately before the commencement of a child custody proceeding") (emphasis added). No other jurisdiction, however, has sought to assert jurisdiction to address custody or the allegations the military forwarded to Arizona.

¶ 9 Arizona can assert jurisdiction over the children under § 25–1031(A)(2) *if it meets the statutory requirements. See Welch–Doden,* 202 Ariz. at 205, ¶ 15, 42 P.3d at 1170 (stating that paragraphs (2)-(4) of A.R.S. § 25–1031(A) "provide the circumstances whereby Arizona may have jurisdiction when it does *not* qualify as the home state"). The statute provides that jurisdiction is appropriate if: (1) no other state has "home state" jurisdiction; (2) the children and parents "have a significant connection with this state other than mere physical presence;" and (3) "[s]ubstantial evidence is available in this state concerning the child's care, protection, training and personal relationships." A.R.S. § 25–1031(A).

¶ 10 Parents argue that the court cannot exercise jurisdiction under the UCCJEA because their children lack the requisite "significant connection" to the state required by § 25–1031(A)(2). Specifically, they argue that no social services were being provided to them in Arizona, they had no previous contact with CPS, and the children have little academic, medical, and social history in Arizona. We disagree.

¶ 11 Although Arizona has yet to define the phrase "significant connection" in § 25–1031(A)(2), other jurisdictions have defined the term. In *Rennie v. Rosenthol,* 995 A.2d 1217 (Pa.Super.Ct.2010), for example, the court defined the phrase based on the dictionary meaning of the words and determined the "significant connection" meant the connection to the state must be meaningful. *Id.* at 1221, ¶ 13. As a result, in order to determine whether a child has a significant connection to justify the exercise of "exclusive, continuing jurisdiction," a court "must look at the nature and quality of the child's contacts with the parent[s] living in the [state]." *Id.; see also West v. West,* 364 Ark. 73, 216 S.W.3d 557, 562 (2005); *Fish v. Fish,* 266 Ga.App. 224, 596 S.E.2d 654, 655–56 (2004). Consequently, to determine whether there is a significant connection to Arizona requires a factual analysis of the record.

¶ 12 Here, the children have significant connections to the state. First, their parents live here by virtue of Father's military assignment and will remain until such time as the military transfers Father to another duty station or his military obligation ends and the family moves to another jurisdiction. The children's paternal grandfather lives in Maricopa County and has helped care for the children. Second, Arizona has the military report of the investigation from Japan, as well as the forensic evaluation of the children that was completed as part of the ADES investigation, which includes information about the care of the children. Finally, one of the children has reported an allegation of abuse that occurred in Arizona, which has been investigated by ADES. Given the totality of the circumstances, the children have a significant connection with Arizona that allows the court to exercise jurisdiction and make the initial custody determination.

Consequently, there was no legal basis to dismiss the dependency petition for lack of jurisdiction.[2]

## II.

¶ 13 Parents also argue that the juvenile court stated that subject matter jurisdiction was improper because the majority of the allegations of alleged abuse or neglect occurred in Japan. Although the court was concerned that much of the evidence pertained to events and allegations that occurred in Japan, an issue that ADES will have to address at the dependency adjudication, one child disclosed an allegation of abuse and neglect that occurred in Arizona. ADES, as a result, was statutorily obligated to investigate the claim and, where necessary, protect the best interests of the child. A.R.S. § 41–1953(D) (West 2013). ADES tried to handle the matter without having to file a dependency petition, but when Parents did not comply with the safety plan, it was obligated to ensure the children were not in danger of harm "by reason of abuse, neglect, [or] cruelty … by a parent." A.R.S. § 8–201(13)(a)(iii) (West 2013). As a result, the juvenile court has subject matter jurisdiction over allegations that a child is dependent by reason of abuse or neglect pursuant to A.R.S. § 8–202(B) (West 2013) (stating that the juvenile court has "exclusive original jurisdiction" over Title 8 dependency proceedings).

¶ 14 Moreover, even if there was no allegation of abuse or neglect in Arizona, the juvenile court would have subject matter jurisdiction over the dependency petition. There is nothing in the child welfare statutes that bars ADES from investigating and, where necessary, taking action to protect children by filing a dependency petition when acts of alleged abuse or neglect occur outside Arizona. In fact, we have stated that the juvenile court could assume jurisdiction under its capacity as *parens patriae* for a child that had been sexually molested outside of Arizona, but for the fact that there was a pending proceeding in Arkansas. *Matter of Pima Cnty. Juv. Action No. J–78632*, 147 Ariz. 527, 532, 711 P.2d 1200, 1205 (App.1985), *affirmed in part and vacated on other grounds* by *Pima Cnty. Juv. Action No. J–78632*, 147 Ariz. 584, 712 P.2d 431 (1986).

¶ 15 Case law from other jurisdictions also supports the exercise of subject matter jurisdiction even if the abuse and neglect did not occur in the state. For example, in *Matter of Westchester County Department of Social Services*, 211 A.D.2d 235, 627 N.Y.S.2d 735 (N.Y.App.Div.1995), an infant was abused while living with her military family in Camp Darby, Italy. *Id.* at 236–37, 627 N.Y.S.2d 735. After the U.S. Army's Family Advocacy Case Management Team ("FACMT") began a child abuse investigation, the mother fled with the child to New York. *Id.* at 236, 627 N.Y.S.2d 735. The FACMT asked the New York Department of Social Services to get involved, and the agency filed a petition after it was notified that the FACMT could not adequately protect the child in Italy. *Id.* at 236–37, 627 N.Y.S.2d 735. The father moved to dismiss for lack of personal and subject matter jurisdiction, and the trial court agreed it did not have subject matter jurisdiction. *Id.* at 237, 627 N.Y.S.2d 735.

¶ 16 On appeal, the court rejected the argument that New York lacked jurisdiction because no abuse occurred in New York. *Id.* at 237–38, 627 N.Y.S.2d 735. Instead, the appellate division held that jurisdiction existed because the child was then in the state, the court had personal jurisdiction over the parents because they were served in the state, and the child was in need of protection because "there wa[s] clear evidence … that the child suffered substantial injury while in the care and custody of the parents." *Id.*

¶ 17 Likewise, the New Hampshire Supreme Court was faced with deciding whether its courts had jurisdiction to resolve child abuse that had occurred in Romania. *In re Juvenile 2002–098*, 148 N.H. 743, 813 A.2d 1197, 1199 (2002). The court held that jurisdiction exists "over any case involving a child found within the State who is alleged to have

---

**2.** Even if the children did not have a significant connection with Arizona pursuant to A.R.S. § 25–1031(A)(2), jurisdiction would still be proper under § 25–1031(A)(4) because no other state has jurisdiction under § 25–1031(A)(1)–(3). *See, e.g., Willie G.*, 211 Ariz. at 234, ¶ 11, 119 P.3d at 1037.

been abused or neglected, no matter where the abuse or neglect is alleged to have occurred." *Id.* at 1200–01 (stating that "[w]e have long recognized the State's *parens patriae* interest in the welfare of children within its jurisdiction").

¶ 18 Similarly, we find the juvenile court had subject matter jurisdiction, even if there had been no allegation of abuse or neglect in Arizona. ADES has an obligation to protect children in need of protection from their parents or other guardians as required by statute. The juvenile court had personal jurisdiction over Parents, and had subject matter jurisdiction over the dependency petition. Also, there was no other state or jurisdiction seeking to address custody or the allegations of abuse or neglect. There was no legal impediment to the adjudication of the dependency petition. Consequently, the court erred by dismissing the dependency petition for lack of jurisdiction.

## ATTORNEYS' FEES AND SANCTIONS

¶ 19 Parents request an award of attorneys' fees and sanctions pursuant to A.R.S. § 12–2106 (West 2013) and Arizona Rule of Civil Appellate Procedure 25. Because we are granting relief sought by ADES, we deny Parents' request.

## CONCLUSION

¶ 20 For the foregoing reasons, we accept jurisdiction and grant relief by vacating the order dismissing the dependency action.[3]

CONCURRING: RANDALL M. HOWE, Presiding Judge, and PATRICIA A. OROZCO, Judge.

---

3. As a result of this decision, the contempt proceedings and the motion to reverse the stay are moot.