NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JOSLIN G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.R., N.D., O.D., *Appellees*.

No. 1 CA-JV 14-0138
FILED 11-18-2014

---

Appeal from the Superior Court in Maricopa County
No. JD21968
The Honorable Joan Sinclair, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Kent E. Cattani joined.

_____

**K E S S L E R**, Judge:

¶1          Joslin G. ("Mother") appeals the juvenile court's order terminating her parental rights to her children, arguing the court lacked jurisdiction. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2          Joslin G. is the mother of T.R., born in 2007, N.D., born in 2008, and O.D., born in 2010 (collectively "the children"). Joshua D. is the father of N.D. and O.D. Travis R. is the father of T.R.[1]

¶3          In May 2012, the Arizona Department of Child Safety ("DCS")[2] received a report that Mother and Joshua D. were abusing substances and neglecting the children. DCS went to the family's home and found the children very dirty, one child with an untreated eye infection, and another inappropriately clothed for the weather.

¶4          During the initial assessment, Mother reported she and the children lived most of their lives in Washington, but had moved every few months since September 2011.[3] Mother admitted that she and Joshua D. had used methamphetamine before moving to Arizona, but claimed they had not used drugs in quite some time. Joshua D., however, passed out during the initial assessment and needed to be transported to the hospital.

_____

[1] The fathers are not parties to this appeal.

[2] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety (DCS) is substituted for the Arizona Department of Economic Security (ADES) in this matter. *See* ARCAP 27. All references to ADES will be changed to reflect the change.

[3] Mother reported living in Alabama for two months, Georgia for three months, and Alabama for a month immediately preceding their move to Arizona in March of 2012, two months prior to the removal of the children by DCS.

The responding crisis team determined Joshua D. was under the influence of an unknown narcotic. Mother also was hospitalized for being a perceived danger to herself. DCS placed the children with Joshua D.'s parents ("the paternal grandparents") and granted the paternal grandparents temporary custody of the children.[4] Mother and Joshua D. moved back to Washington in June 2012. Mother, however, returned to Arizona in July of 2013.

¶5              Upon removal of the children in May 2012, DCS filed a dependency petition and petition for paternity and/or child support. The court ordered the children temporary wards of the state and to remain with the paternal grandparents. Mother moved to dismiss the petition for lack of jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). *See* Ariz. Rev. Stat. ("A.R.S.") § 25-1001 (2007). Mother conceded Arizona likely had temporary emergency jurisdiction because the children were present in Arizona without a parent, a legal guardian, or anyone with proper legal authority over them, but argued that Washington retained ongoing jurisdiction. Mother asked the court to dismiss the action or, alternatively, to communicate with Washington courts to resolve the jurisdictional question.

¶6              DCS opposed Mother's motion to dismiss, arguing the children did not have a home state under the UCCJEA because of the family's frequent relocations dating back to September 2011.[5] As such, DCS argued Arizona had jurisdiction under A.R.S. § 25-1031(A)(2).[6] Further,

---

[4] The paternal grandparents were identified as having a significant relationship with all three children, including T.R., who is not their biological grandchild.

[5] For the purposes of this decision, the term "home state" is defined as the state in which a child has lived with a parent or person acting as a parent for at least six consecutive months prior to the commencement of a child custody proceeding. A.R.S. § 25-1002(7)(a).

[6] A.R.S. § 25-1031(A)(2) confers jurisdiction to make an initial child custody determination to an Arizona juvenile court if no court in any other state has jurisdiction to do so as the home state of the child or a court of the home state has declined to exercise jurisdiction on the ground that Arizona is the more appropriate forum. Further, A.R.S. § 25-1031(A)(2)(a)–(b) confer jurisdiction if the child and at least one parent have a significant connection with Arizona, beyond mere physical presence, and substantial evidence is available in Arizona regarding the child's care, protection, training, and personal relationships.

DCS maintained that Arizona had temporary emergency jurisdiction under A.R.S. § 25-1034(A) and there were no orders entitled to enforcement nor custody proceedings in any other state at the time of removal.

¶7 In reply, Mother argued Washington was the children's home state because Washington courts had issued several orders between 2007 and 2011 dealing with the best interests of the children.[7] She contended because Washington had issued these orders based on the best interests of the children and had acknowledged Washington as the children's home state at the time those orders were issued, Washington was the children's home state.

¶8 After a pretrial conference in September 2012, during which the juvenile court designated the case plan to be family reunification concurrent with severance and adoption, the court issued a minute entry informing the parties that it had spoken to a juvenile court judge in Washington concerning the case. The judges agreed it was sensible to return the children to Washington, given the children's parents were located, or were soon to be located, in Washington. The Arizona juvenile court ordered DCS and the Arizona Attorney General's Office to coordinate with their counterparts in Washington to transfer the children to Washington, but indicated it would not dismiss the case until receipt of written verification, from the Washington counterpart of DCS, that the children were in Washington's custody.

¶9 However, at the time of a report and review hearing in November 2012, the children continued to reside in Arizona. Although counsel for DCS had contacted her counterpart in Washington, she was informed the Washington Attorney General's Office would not file or move forward until they heard from the Washington counterpart of DCS. DCS requested the Arizona juvenile court to contact a Washington judicial

7 The orders presented by Mother included: (1) a 2007 judgment and sentencing order entered against Travis R., T.R.'s father, for misdemeanor domestic violence against Mother, requiring Travis R. to have no contact with Mother; (2) a 2008 judgment and order determining the parentage of T.R.; (3) a 2008 order granting summary judgment with regards to paternity of T.R. and child support; (4) a 2011 order of child support for the benefit of T.R.; (5) an order of contempt against Travis R.; (6) a 2009 temporary order of protection against Travis R., granting Mother temporary custody of T.R.; and (7) a 2009 order of protection against Travis R., granting Mother temporary custody of T.R. and N.D., declaring Washington the home state of the children.

officer and request that a DCS case be opened in Washington and that DCS in Washington take custody of the children. The juvenile court agreed to continue to attempt to contact the Washington juvenile court, noting it had tried to contact the Washington court several times about the case but had received no response.

**¶10** At the report and review hearing in April 2013, the juvenile court stated it had made additional efforts to work with its counterpart in Washington, including having sent a letter stating an intent to set a formal UCCJEA hearing, but had not received a reply from the Washington court. Because the Washington court had failed to reply to the numerous attempts at contact, the juvenile court ruled it would retain jurisdiction in the matter.

**¶11** In August 2013, the juvenile court changed the case plan to severance and adoption. DCS petitioned to terminate Mother's parental rights based on the children being in an out-of-home placement for longer than fifteen months; on Mother not being able to remedy the circumstances which resulted in removal; and on the substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control in the near future.[8] *See* A.R.S. § 8-533(B)(8)(c).

**¶12** The juvenile court held a severance hearing in April 2014. Mother did not appear except by counsel, and the court proceeded by default because mother had waived her rights by failing to appear. Mother's counsel continued to object to the severance based on lack of jurisdiction, but the court found it had jurisdiction because the children were in Maricopa County at the time the proceedings were commenced. *See* A.R.S. § 8-532(A) (2014). The court found termination of mother's parental rights to the children was appropriate by clear and convincing evidence and that severance would be in the best interest and welfare of the children by a preponderance of the evidence.

**¶13** Mother filed a timely appeal, within fifteen days of the severance order. We have jurisdiction pursuant to A.R.S. §§ 8-235(A)(2007),

---

[8] DCS also petitioned to terminate the parental rights of Travis R., based on his abandonment of T.R., *see* A.R.S. § 8-533(B)(1); and of Joshua D., based on N.D. and O.D.'s being in an out-of-home placement for longer than fifteen months; on Joshua D.'s inability to remedy the circumstances which resulted in removal; and on the substantial likelihood that Joshua D. would not be capable of exercising proper and effective parental care and control in the near future, *see* A.R.S. § 8-533(B)(8)(c). The parental rights of both Travis R. and Joshua D. were terminated on December 17, 2013.

12-120.21(A)(1) (2003), 12-2101(A)(1) (Supp. 2013) and Juv. Ct. Rules of Proc., Rule 104(A).

## ISSUE AND STANDARD OF REVIEW

¶14 Mother argues on appeal the juvenile court did not properly consider whether it had jurisdiction under the UCCJEA, given the "possibility of a custody order in Washington." At trial, DCS argued the juvenile court had jurisdiction to make an initial child custody determination under A.R.S. § 25-1031(A)(2) because there was no home state when DCS filed the dependency petition or within six months prior to the filing, the children and parents had a significant connection with Arizona, and there was substantial evidence regarding the children's welfare in Arizona. On appeal DCS argues the juvenile court had jurisdiction under A.R.S. § 25-1031(A)(2) or, in the alternative, A.R.S. § 25-1031(A)(4). Further, DCS argues that the Arizona juvenile court had jurisdiction to modify Washington's initial child custody determination as to T.R. under A.R.S. § 25-1033.

¶15 Subject matter jurisdiction cannot be waived or forfeited. *State v. Chacon*, 221 Ariz. 523, 526, ¶ 5, 212 P.3d 861, 864 (App. 2009). An order entered by a court lacking subject matter jurisdiction is void. *Id.* We review issues of subject matter jurisdiction de novo. *Angel B. v. Vanessa J.*, 234 Ariz. 69, 71, ¶ 6, 316 P.3d 1257, 1259 (App. 2014); *Ariz. Dep't of Econ. Sec. v. Grant*, 232 Ariz. 576, 579, ¶ 5, 307 P.3d 1003, 1006 (App. 2013) (holding jurisdiction over severance is a question of law and is reviewed de novo). We review any evidence presented to the juvenile court in the light most favorable to affirming the court's decision. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1079 (App. 2007); *see also Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App. 2002). We assume the trial court considered any admissible evidence presented to it before making its decision, *Fuentes v. Fuentes*, 209 Ariz. 51, 55–56, ¶ 18, 97 P.3d 876, 880–81 (App. 2004) and will affirm the court on any basis supported by the record. *Adage Towing and Recovery, Inc. v. City of Tucson*, 187 Ariz. 396, 398, 930 P.2d 473, 475 (App. 1996).

## DISCUSSION

¶16 We summarily reject Mother's argument that the trial court did not consider the possibility of jurisdiction under the UCCJEA. In her motion to dismiss, Mother presented the court with evidence Washington might have been the children's home state for UCCJEA purposes. We presume the court considered any evidence and arguments presented to it.

*Fuentes*, 209 Ariz. at 55–56, ¶ 18, 97 P.3d at 880–81 (App. 2004). The court also repeatedly contacted Washington to determine which court should have jurisdiction, indicating that it was considering whether it had jurisdiction under the UCCJEA.

¶17        To the extent Mother argues the evidence she presented showed the juvenile court did not have jurisdiction under the UCCJEA, we disagree.

I.      The Arizona juvenile court had jurisdiction to issue an initial custody determination with respect to N.D. and O.D. under A.R.S. § 25-1031(A)(2).

¶18        Jurisdiction to issue an initial child custody determination is conferred on the superior court by A.R.S. § 25-1031(A)(2) if another state does not have jurisdiction under A.R.S. § 25-1031(A)(1),[9] the child and at least one parent have a significant connection to Arizona, other than mere physical presence, and there is substantial evidence in Arizona concerning the child's care.

¶19        In this case, no court in any other state had jurisdiction to make an initial child custody determination under A.R.S. § 25-1031(A)(1). Washington could not be considered the children's home state pursuant to A.R.S. § 25-1031(A)(1), because, at the time of removal and the commencement of these proceedings, the children had not been in Washington for more than six months. Further, the children were present in Arizona with one of their parents at the time DCS placed the children with the paternal grandparents. The presence of the paternal grandparents in Arizona, as well as the investigation by DCS, demonstrates not only there was substantial evidence in Arizona concerning the children's care, protection, training and personal relationships, but also the children and at least one of the children's parents had a connection with Arizona, more significant than mere physical presence at the time of removal.

---

[9] A.R.S. § 25-1031(A)(1) confers jurisdiction on Arizona to make an initial custody determination if Arizona is the "home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from [Arizona] but a parent or person acting as a parent continues to live in [Arizona]."

¶20 Moreover, the Arizona juvenile court had jurisdiction to enter initial custody orders because none of the Washington orders proffered by Mother can be considered initial custody orders as to N.D. and O.D. The 2007 judgment and sentence of T.R.'s father for misdemeanor domestic violence did not confer custody of any child to either parent.[10] The 2008 determination of parentage of T.R., and the order granting summary judgment on the same issue, also did not confer custody of N.D. and O.D. to Mother or Joshua D. Further, an order for child support is not a child custody determination. *See* A.R.S. § 25-1002(3)(b). Thus, neither order for child support was a determination of custody for any of the children. The order of contempt against Travis R. also failed to confer custody of any of the children in any way to either parent. Finally, while the orders of protection issued in 2009 did provide that Washington was the home state of the children and that Mother had temporary custody of T.R. and N.D., those orders expired long before the current proceedings began. Under Washington law, the orders of protection do not extend jurisdiction under the UCCJEA beyond the term of the order. *In re Parentage, Parenting, and Support of A.R.K.-K. v. Kelly*, 174 P.3d 160, 164, ¶ 16 (Wash. Ct. App. 2007). Therefore, the Arizona juvenile court had jurisdiction under A.R.S. § 25-1031(A)(2).

II. The Arizona juvenile court had jurisdiction to make an initial child custody determination with respect to N.D. and O.D. under A.R.S. § 25-1031(A)(4).

¶21 Alternatively, the juvenile court had jurisdiction to make an initial child custody determination with respect to N.D. and O.D. under A.R.S. § 25-1031(A)(4) because no court of any other state had jurisdiction under the criteria specified in A.R.S. § 25-1031(A)(1)–(3).[11] No other state could be considered the home state of any of the children under A.R.S. § 25-1031(A)(1) for the reasons stated above concerning length of time the children were in any particular state. Further, neither the children nor evidence concerning their care, protection, training, and personal relationships were present in any other state as required by section 25-1031(A)(2). Finally, since Washington did not have jurisdiction under (A)(1) or (A)(2), subsection (A)(3) does not apply because it requires a state

---

[10] RCW 26.27.021 states a child custody determination is a "judgment, decree, parenting plan, or other order of a court providing for the legal custody . . . with respect to a child." It parallels A.R.S. § 25-1002(3)(a).

[11] A.R.S. § 25-1031(A)(4) confers jurisdiction to Arizona where no other state has jurisdiction under A.R.S. § 25-1031(A)(1)–(3).

which has jurisdiction under the first two subsections to exercise such jurisdiction to allow Arizona to determine custody.[12] Therefore, the Arizona juvenile court had jurisdiction under A.R.S. § 25-1031(A)(4).

III. The Arizona juvenile court had jurisdiction to make an initial child custody determination with respect to N.D. and O.D. under A.R.S. § 25-1034(B).

**¶22** We also conclude the juvenile court had jurisdiction to make an initial child custody determination with respect to N.D. and O.D. under A.R.S. § 25-1034(B).[13] Section 1034(A) provides that an Arizona court has temporary emergency jurisdiction to act when a child is present in Arizona and there is an emergency situation requiring that child to be protected from mistreatment or abuse. Pursuant to section 25-1034(B), if there is no previous child custody determination "entitled to be enforced" and a child custody proceeding has not been commenced in another state having jurisdiction, a temporary custody determination made under A.R.S. § 25-1034 becomes a final determination if it so provides and Arizona becomes the home state.

**¶23** Here, the children were subject to abuse or mistreatment and there was no custody determination entitled to be enforced as to N.D. or O.D. in Washington, or any other state, because the orders of protection had expired. *See Kelly*, 174 P.3d at 164, ¶ 16 (jurisdiction conferred via temporary order expires when that order expires). As discussed above, none of the other orders Mother presented to the juvenile court qualified as a child custody determination as to N.D. and O.D. and there was no evidence any custody proceeding had been commenced in another state. To construe expired proceedings in another state as depriving Arizona of jurisdiction to protect children present in Arizona would have left these children in limbo.

---

[12] A.R.S. § 25-1031(A)(3) confers jurisdiction on Arizona where another court having jurisdiction declines to exercise jurisdiction on the grounds that Arizona is the more appropriate forum.

[13] The State argued below that jurisdiction existed under section 25-1034(B). While the State does not make that argument on appeal, we can affirm on any ground raised below and supported by the record. *Adage Towing & Recovery, Inc. v. City of Tucson*, 187 Ariz. 396, 398, 930 P.2d 473, 475 (App. 1996).

IV.    The Arizona juvenile court had jurisdiction to modify Washington's 2008 child custody determination with respect to T.R. under A.R.S. § 25-1033.

**¶24**    The UCCJEA defines a child custody determination as "any judgment, decree, or other order of a court, including a permanent, temporary, initial and modification order, for legal custody, physical custody or visitation with respect to a child."  A.R.S. § 25-1002(3)(a).  As such, the 2008 judgment and order determining the parentage of T.R. and the 2008 order granting summary judgment regarding the paternity of T.R., both entered by the Washington court and proffered by Mother below to demonstrate Washington had jurisdiction over the matter, constitute an initial child custody determination with regards to T.R.

**¶25**    The UCCJEA, however, allows for the court of one state to modify a child custody determination made by a court of another state under certain circumstances.  For an Arizona juvenile court to have jurisdiction to modify a Washington child custody determination, the Arizona juvenile court must have jurisdiction to make an initial determination under A.R.S. § 25-1031(A)(1) or (2).  *See* A.R.S. § 25-1033.  In addition, one of the following conditions must exist: (1) the Washington court determines it no longer has exclusive, continuing jurisdiction, (2) the Washington court determines that Arizona would be a more convenient forum, or (3) an Arizona court determines that the child, the child's parents, and any person acting as a parent do not presently reside in Washington. *Id.* Here, as previously discussed, the Arizona juvenile court had jurisdiction to make an initial child custody determination, with regards to all three children, under A.R.S. § 25-1031(A)(2).[14]   Further, the record supports a finding that T.R., Mother, and the paternal grandparents were residing in Arizona, not in Washington, at the time of removal, at the time DCS filed the dependency petition, at the time DCS filed the severance petition, and at the time of the severance hearing.  "We will infer the necessary findings to affirm" the juvenile court's order, so long as those "implied findings do not conflict with the court's express findings." *State v. Zamora*, 220 Ariz. 63, 67, ¶ 7, 282 P.3d 528, 532 (App. 2009) (citations omitted).  Therefore, we infer that the Arizona juvenile court determined T.R., Mother, and the paternal grandparents were not residing in Washington at any pivotal point during the dependency or severance actions.   As such, the juvenile court had jurisdiction to modify

---

[14] *See supra* Section I, ¶ 19.

Washington's 2008 child custody determination with respect to T.R. under A.R.S. § 25-1033.

**CONCLUSION**

**¶26** For the reasons stated above, we conclude the juvenile court had jurisdiction to issue the severance order. Accordingly, we affirm the juvenile court's order.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : gsh