IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JUL 29 2005

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| WILLIE G., | ) | |
| | ) | 2 CA-JV 2004-0065 |
| Appellant, | ) | 2 CA-JV 2004-0066 |
| | ) | (Consolidated) |
| v. | ) | DEPARTMENT B |
| | ) | |
| ARIZONA DEPARTMENT OF | ) | O P I N I O N |
| ECONOMIC SECURITY and | ) | |
| NYKOLE G., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |
| | ) | |
| BONNIE H., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARIZONA DEPARTMENT OF | ) | |
| ECONOMIC SECURITY and | ) | |
| NYKOLE G., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

APPEALS FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 12152400

Honorable Elizabeth Peasley-Fimbres, Judge Pro Tempore

AFFIRMED

Joan Spurney Caplan                                                                      Tucson
                                                    Attorney for Appellant Willie G.


Jacqueline Rohr                                                                          Tucson
                                                    Attorney for Appellant Bonnie H.


Terry Goddard, Arizona Attorney General
  By Dawn R. Williams                                                                   Tucson
                                                    Attorneys for Appellee Arizona
                                                    Department of Economic Security

---

P E L A N D E R, Chief Judge.

¶1        Appellants Willie G. and Bonnie H. appeal from the juvenile court's order of July 14, 2004, adjudicating their daughter, Nykole G., a dependent child. In these consolidated appeals, the parents collectively challenge the court's jurisdiction to entertain the dependency proceeding and the sufficiency of the evidence establishing that Nykole was dependent as to Willie. They also argue the juvenile court abused its discretion and deprived them of constitutional rights by refusing to let them appear telephonically at the contested dependency hearing and in other respects.

¶2        As defined in A.R.S. § 8-201(13)(a), a dependent child includes one:

> (i)    In need of proper and effective parental care and control and who has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control[;]

> (ii)   Destitute or who is not provided with the necessities of life, including adequate food, clothing, shelter or medical care[; or]

2

> (iii) A child whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child.

The petitioner's burden of proof in a dependency proceeding is a preponderance of the evidence. A.R.S. § 8-844(C)(1); *In re Cochise County Juvenile Action No. 5666-J*, 133 Ariz. 157, 159, 650 P.2d 459, 461 (1982).

## Factual and Procedural Background

¶3 Before Nykole was born on June 5, 2001, the Arizona Department of Economic Security (ADES) and Child Protective Services (CPS) had been involved over a period of years with Bonnie and four older children not fathered by Willie. ADES had first filed dependency petitions in 1993 and 1994 as to Bonnie's daughters Alexandria and Blake, born in 1992 and 1994. Bonnie ultimately relinquished her parental rights to those two in 1996. She gave birth to a third daughter, Bridget, in 1997 and to a son, Anthony, in 1999. ADES took Bridget and Anthony into protective custody in 2000, and they were adjudicated dependent as to Bonnie in September of that year. Within days of Nykole's birth in June 2001, ADES filed a dependency petition as to her as well, and the juvenile court adjudicated Nykole dependent as to both Bonnie and Willie in September 2001.

¶4 The parents appealed, and this court reversed the adjudication in September 2002, finding ADES had failed to prove by a preponderance of the evidence that Nykole was in fact dependent as to either Bonnie or Willie. *Bonnie H. v. Ariz. Dep't of Econ. Sec.*, Nos. 2 CA-JV 2001-0077, 2 CA-JV 2001-0078 (consolidated) (memorandum decision filed

3

Sept. 13, 2002). The dependency proceeding as to Nykole was dismissed soon after our mandate issued, and Nykole was returned to her parents' custody in December 2002. In light of those and other events, severance proceedings that had been pending as to Bridget and Anthony were also dismissed. The dependency proceeding remained open as to them, but the case plan goal for Bridget and Anthony was changed from severance to family reunification.

¶5        Bridget and Anthony were not returned to Bonnie's physical custody until February 2004. Despite the passage of over three years since the children had been adjudicated dependent, by February 2004, Bonnie and Willie still had not achieved stable employment, steady income, or independent housing. They and Nykole had been living with Willie's parents and planning to move to Kentucky to live with an aunt once Bonnie regained custody of Bridget and Anthony. On March 26, 2004, the juvenile court expressly denied permission for Bonnie and Willie to take Bridget and Anthony from Arizona to Kentucky, stating:

> At this point I don't feel comfortable saying[, "]Okay, you can move to Kentucky now.["] I want to see a period of time in which the children are placed with you and things are going well. I'm really encouraged by what I'm hearing, but I need to see a bit more time.

¶6        Nonetheless, sometime between April 9 and April 11, Bonnie and Willie took all three children and left Arizona for Kentucky. ADES learned that the family was in a motel in Texas and arranged for authorities there to pick up Bridget and Anthony on April

4

11. ADES then filed a dependency petition as to Nykole and obtained a court order authorizing CPS to take her into custody. The same authorities picked Nykole up on April 13 and placed her in a temporary foster home with Bridget and Anthony. Although all three children were returned to Arizona, Bonnie and Willie did not return but, instead, continued to Kentucky without the children.

¶7 In May 2004, the juvenile court denied the parents' oral request for permission to appear telephonically at the contested dependency hearing. In June, it denied a written motion to reconsider its ruling. Neither parent appeared in person at the contested dependency hearing on July 7, at which the state presented the testimony of five witnesses and other evidence, and the juvenile court found Nykole's dependency had been proved by a preponderance of the evidence as to both parents.

**Legal Issues**

¶8 Bonnie and Willie first challenge the jurisdiction of the juvenile court to order Nykole to be taken into custody in Texas and to entertain dependency proceedings in Arizona. Bonnie argues that, because Nykole was not the subject of a pending dependency action or custody order when she left the state, Arizona lacked jurisdiction over her once she was physically outside Arizona. Both Bonnie and Willie argue that the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), A.R.S. §§ 25-1001 through 25-1067, does not apply in these circumstances. Matters of statutory interpretation are questions of law, which we review de novo. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, ¶

5

9, 83 P.3d 43, 47 (App. 2004). Our review of mixed questions of fact and law is similarly de novo. *Wilmot v. Wilmot*, 203 Ariz. 565, ¶ 10, 58 P.3d 507, 510 (2002).

**¶9**        Contemporaneously with its motion for an order authorizing CPS to take custody of Nykole in Texas, ADES filed a dependency petition concerning Nykole, mistakenly entitled "Third Amended Dependency Petition." Although ADES had indeed filed a previous dependency petition and two subsequent amended petitions, all three preceded our decision on appeal, which reversed the September 2001 adjudication of dependency and led in turn to the termination of that proceeding. As a result, the new petition was mistitled an "amended" petition. ADES rectified the mistake three days later by filing a "dependency petition and petition for paternity and financial responsibility."

**¶10**       Willie argues that the order authorizing ADES to take custody of Nykole was invalid because the "third amended dependency petition" on which it was based had been invalid. Although the petition was indeed mislabeled, it was replaced almost immediately by the substantively similar, and correctly titled, dependency petition filed three days later. The error in the title of the first petition was one of form, not substance, and it was promptly remedied. We decline to hold that the error in labeling the petition invalidated the juvenile court's attendant order authorizing CPS to take Nykole into custody pursuant to the general authority conferred by A.R.S. § 8-821.

**¶11**       Like Arizona, Texas also has adopted the UCCJEA, Tex. Fam. Code Ann. §§ 152.001 through 152.317, which encompasses dependency proceedings among the

various "[c]hild custody proceeding[s]" to which the Act applies.  A.R.S. § 25-1002(4)(a).

An Arizona court "has jurisdiction to make an initial child custody determination" if Arizona

"is the home state of the child on the date of the commencement of the proceeding."  § 25-

1031(A)(1).  Pursuant to § 25-1031(A)(4), Arizona also has jurisdiction if no other state

would have jurisdiction under any of the alternative criteria specified in § 25-1031(A)(1),

(2), or (3).

**¶12**        Clearly, Arizona was Nykole's "home state" by virtue of her having lived here

since her birth, including "at least six consecutive months immediately before the

commencement" of the dependency proceeding.  § 25-1002(7)(a).  Notwithstanding her

removal from the state only days before ADES filed the correctly titled dependency petition,

Arizona remained Nykole's home state for purposes of the UCCJEA.  Moreover, no other

state qualified as her home state under the definitions of § 25-1002(7)(a), making Arizona's

jurisdiction manifest under either § 25-1031(A)(1) or (A)(4).  We thus reject the parents'

contentions that the juvenile court lacked jurisdiction over this dependency proceeding.

**¶13**        Second, the parents contend the juvenile court abused its discretion by

refusing to allow them to participate in the contested dependency hearing by telephone from

Kentucky.  We review a juvenile court's ruling on a discretionary matter for a clear abuse

of the court's discretion.  *E.g., In re Stephanie B.*, 204 Ariz. 466, ¶ 8, 65 P.3d 114, 116

(App. 2003) (determination of restitution award); *William Z. v. Ariz. Dep't of Econ. Sec.*,

192 Ariz. 385, ¶ 9, 965 P.2d 1224, 1226 (App. 1998) (ruling on timeliness of motion to

intervene); *In re Pima County Severance Action No. S-2248*, 159 Ariz. 302, 305, 767 P.2d 25, 28 (App. 1988) (rulings on requests for psychological examination of child and for consolidation of one sibling's termination hearing with another's dependency hearing). Determining what constitutes good cause for a party's failure to appear at a hearing is "largely discretionary." *John C. v. Sargeant*, 208 Ariz. 44, ¶ 13, 90 P.3d 781, 784 (App. 2004).

¶14 Rule 42, Ariz. R. P. Juv. Ct., 17B A.R.S., provides that a juvenile court "may permit telephonic testimony or argument or video conferencing in any dependency, guardianship or termination of parental rights hearings." The juvenile court thus had the authority, but not an obligation, to allow the parents to appear by telephone rather than in person. At a settlement conference in June 2004, at which Bonnie and Willie did appear by telephone, the court admonished them that their personal appearances would be required for the contested dependency hearings and that the court would "in all likelihood" deem their absence from those proceedings an admission to the allegations of the dependency petition.

¶15 The parents then filed a joint motion to reconsider, citing their "extremely limited financial resources" as the reason they would "have great difficulty" returning to Tucson for the hearing. As authority for their request to appear by telephone rather than in person, they cited *John C.,* which held that a father's incarceration in a federal prison had constituted good cause for his failure to appear at a jury trial in an action to terminate his

8

parental rights. "[A] telephonic appearance [at a severance trial] is an acceptable alternative to personal appearance when personal appearance is prevented by incarceration." 208 Ariz. 44, ¶ 17, 90 P.3d at 785.

¶16    Bonnie and Willie, of course, were not incarcerated but, rather, elected to leave the state with Nykole and her half-siblings. Then, despite knowing that the children were being returned to Arizona, the parents chose to move to Kentucky without them. The juvenile court found the parents' absence was entirely voluntary, noting that they had left Arizona surreptitiously and in contravention of the court's express refusal to permit them to do so in Bridget's and Anthony's dependency proceeding.

¶17    Although the court stated additional reasons for denying the parents' request to appear telephonically—the need to observe and monitor their behavior during the hearing, particularly in light of Bonnie's previous inappropriate, profane, and disrespectful behavior in court; the "chronic problems" with the court's unreliable telephone system; and the anticipated length of the hearing—the court appears to have assigned greatest weight to the voluntary nature of the parents' departure and their resulting absence from the state. We do not find its reasoning arbitrary, capricious, or inappropriate. *See Quigley v. City Court*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (App. 1982) (abuse of discretion "is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons"). Even if another court might have ruled differently, *see Toy v. Katz*, 192 Ariz. 73, 83, 961

9

P.2d 1021, 1031 (App. 1997), we cannot say the juvenile court abused its discretion by insisting that Bonnie and Willie attend the dependency hearing in person.

¶18  Next, the parents contend that, by refusing to permit them to appear telephonically and confer with counsel during the dependency hearing, the court denied them due process and the right conferred by Rule 52(C)(4)(b), Ariz. R. P. Juv. Ct., to confront and cross-examine the witnesses against them.  The record does not support their contention.  Instead, it reflects that Bonnie and Willie were properly served the dependency petition and notice of all hearings, were represented by counsel throughout, and were told repeatedly by the court that their presence was required at all hearings and that their failure to appear could result in Nykole's being adjudicated dependent in their absence.  The essential requirements of procedural due process are reasonable notice and an opportunity to be heard.  *J.D.S. v. Franks*, 182 Ariz. 81, 95, 893 P.2d 732, 746 (1995); *In re Pima County Juvenile Action No. S-949*, 131 Ariz. 100, 101, 638 P.2d 1346, 1347 (App. 1981). Bonnie and Willie clearly received both.

¶19  On June 30, one week before the dependency adjudication hearing, the court denied the parents' joint motion to reconsider its earlier ruling on their oral request to attend the hearing telephonically.  In denying the motion to reconsider, the court underscored its previous admonitions and its ruling requiring the parents to be physically present for the hearing as contemplated by Rule 55(D)(2), Ariz. R. P. Juv. Ct.  Although the parents now argue they were financially unable to return to Arizona for the hearing, the juvenile court

10

was entitled to view that as an unfortunate but easily foreseeable consequence of their decision to leave the state and move to Kentucky.

¶20    The juvenile court cannot be said to have deprived Bonnie and Willie of their constitutional rights simply by refusing to specially accommodate circumstances the parents had themselves created by removing Bonnie's two dependent children from the jurisdiction and moving away, in contravention of an express ruling by the court. If Bonnie and Willie were subsequently unable to exercise their rights to attend the dependency hearing, confer with counsel, confront the witnesses against them, and otherwise participate in the proceeding, that was a direct result of their decision to ignore the juvenile court's ruling, leave the state, and effectively forfeit the rights they now claim they were denied. We reject their argument.

¶21    Finally, both parents contend there was no reasonable evidence to support the court's finding that Nykole was dependent as to Willie. On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings. *In re Maricopa County Juvenile Action No. JD-5312*, 178 Ariz. 372, 376, 873 P.2d 710, 714 (App. 1994). We generally will not disturb a dependency adjudication unless no reasonable evidence supports it. *In re Maricopa County Juvenile Action No. JD-500200*, 163 Ariz. 457, 461, 788 P.2d 1208, 1212 (App. 1989). And, because "[t]he primary consideration in a dependency case is always the best interest of the child, . . . the juvenile court is vested with 'a great deal of discretion.'" *Ariz. Dep't of Econ. Sec. v.*

11

*Superior Court*, 178 Ariz. 236, 239, 871 P.2d 1172, 1175 (App. 1994), *quoting In re Cochise County Juvenile Action No. 5666-J*, 133 Ariz. 157, 160, 650 P.2d 459, 462 (1982).

¶22 Although Willie was not formally a party to the dependency proceeding on Bonnie's older children, Bridget and Anthony, he had accepted reunification services from CPS and had been participating voluntarily in the case plan with Bonnie. When Bridget and Anthony were returned to Bonnie's custody in 2004, Willie, Bonnie, and all three children were living with Willie's parents in a two-bedroom apartment, and Willie was working "various hours for a temporary agency." Willie's and Bonnie's lack of stable housing, employment, and income had long been an issue in the case and remained so when they absconded with the children in April 2004.

¶23 When the authorities in Texas arrived to take Bridget and Anthony into custody, they noted a strong odor of marijuana emanating from the motel room. In response to questioning, Willie produced a quantity of marijuana from a tin box underneath a bed. As a result, he was arrested, jailed, and charged with possessing marijuana, rendering him obviously unable to care for Nykole. After Willie's arrest and the removal of Bridget and Anthony, Bonnie had no money, no place to stay, and no means of providing for Nykole. She and Nykole were living in a shelter when authorities returned two days later to take Nykole into custody.

¶24     Once in protective custody in Texas, Nykole was discovered to have a nickel-sized, greenish bruise on her back, which she said had resulted from her mother's kicking her in the back. Nykole was placed together with Bridget and Anthony in a temporary foster home in Texas until an Arizona CPS parent aide arrived to bring all three children back to Arizona. Told by the foster mother that something was wrong with Nykole's stomach, the aide noticed that Nykole appeared bloated. The aide believed Nykole was probably bloated from constipation, although Nykole stated repeatedly that her mother had hit her and kicked her in the stomach.

¶25     Even before the family had left Arizona, the same aide had seen a bite mark on Nykole's hand that Nykole had variously attributed to each of her parents. Bonnie explained the mark by saying she had "had Nykki bite herself so she could see . . . what it felt like" when Nykole bit other children. Particularly in combination, Nykole's injuries afforded evidence of Willie's failure or inability to protect her from abuse at her mother's hands and, thus, of Nykole's dependency. The juvenile court also took judicial notice of Willie's role in leaving Arizona with Bonnie and her children knowing that the court had denied Bonnie permission to remove Bridget and Anthony from the state.

¶26     The CPS caseworker testified that she had spoken with Willie by telephone in May 2004. He had called her to say he wanted the dependency proceedings transferred to Kentucky and the children returned to his and Bonnie's custody there. Willie said, however, that neither he nor Bonnie would submit to random urinalyses and that Bonnie

13

would not seek mental health services in Kentucky. Willie denied the need for either. In the same conversation, he claimed to have a job and housing in Kentucky, but he never sent CPS requested confirmation of either. He similarly failed to document his assertion that the marijuana charges against him in Texas had been dismissed.

¶27 In sum, the evidence supported the juvenile court's findings and was more than sufficient to sustain its conclusion that Nykole was dependent as to both Willie and Bonnie, neither of whom was exercising, or currently able to exercise, "proper and effective parental care and control" of Nykole. § 8-201(13)(a)(i). We therefore affirm the juvenile court's order adjudicating Nykole dependent as to both parents.

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
M. JAN FLÓREZ, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge