NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARYN B. AND ZANIELLE G., *Petitioners*,

*v.*

THE HONORABLE JOSE S. PADILLA, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

THE HONORABLE LORI ASH, Commissioner of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Commissioner*,

DEPARTMENT OF CHILD SAFETY, TRESCA P., DONALD S., W.P.,
*Real Parties in Interest*.

No. 1 CA-SA 19-0294
FILED 2-6-2020

Petition for Special Action from the Superior Court in Maricopa County
No. JD22566
The Honorable Jose S. Padilla, Judge (Retired)
The Honorable Lori Ash, Commissioner

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART**

COUNSEL

Horne Slaton, PLLC, Scottsdale
By Thomas C. Horne, Kristin M. Roebuck Bethell
*Counsel for Petitioners*

Arizona Attorney General's Office, Phoenix
By Dawn Williams
*Counsel for Real Party in Interest Department of Child Safety*

Your AZ Lawyer, Glendale
By Sarah J. Michael
*Counsel for Real Party in Interest Tresca P.*

Law Offices of Kirsten Wright, PLLC, Phoenix
By Kirstin J. Wright
*Counsel for Real Party in Interest Donald S.*

The Law Office of Deylynn N. Moore PLLC, Phoenix
By Deylynn Nicole Moore
*Guardian Ad Litem for Real Party in Interest W.P.*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

**¶1**       Maryn B. and Zanielle G. (collectively "Foster Parents") seek special action relief from a superior court order removing a minor child ("W") from their care. For the following reasons, we accept jurisdiction and grant relief in part, finding the superior court abused its discretion in excluding Foster Parents from a hearing and the Department of Child Safety ("DCS") failed to follow statutory procedure in the removal of W from the foster placement.

## FACTS AND PROCEDURAL HISTORY

**¶2**       In November 2018, DCS filed a petition to find W dependent as to her biological parents, Tresca P. ("Mother") and Donald S. ("Father"). DCS placed W in Foster Parents' care three days after W's birth, and W remained with Foster Parents through December 13, 2019.

**¶3**       In January 2019, Mother filed a motion under Arizona Rule of Procedure for the Juvenile Court ("Rule") 59, requesting DCS return W to her custody. DCS opposed the motion, and the superior court denied

2

Mother's request. Mother filed a second Rule 59 motion in September 2019. The superior court held an initial evidentiary hearing on Mother's Rule 59 motion in October and continued the hearing to December 13, 2019.

**¶4** In November, Mother and Father filed a joint motion for emergency change of physical custody from Foster Parents, alleging Foster Parents were threatening to subject the dependency case to media scrutiny, had inappropriately shared information about Father's criminal history[1] with W's physicians and others, and had attempted to share information about Mother's prior drug use with W's physician. DCS objected to the joint motion and advised the superior court that DCS did not share Mother's and Father's concerns and that the allegations in the motion "have all been previously raised, discussed, and/or remedied on prior occasions."

**¶5** At the continued Rule 59 evidentiary hearing on December 13, Mother's attorney made an oral motion to "close the courtroom" and exclude Foster Parents from the hearing. Mother's attorney referred to the allegations in the pending joint motion, and also consistent with the joint motion, Father's attorney alleged that Foster Parents had provided "concerning information" about Father's criminal history to W's physicians. Over the objections of DCS and W's guardian *ad litem*, Judge Padilla excluded Foster Parents from the hearing but did not close the proceedings to the public. A parent aide and Mother then testified regarding Mother's Rule 59 motion.

**¶6** After leaving the courtroom, Foster Parents spoke with members of the superior court's staff. One staff member relayed a portion of the conversation in an email to Judge Padilla, who instructed the guardian *ad litem* and counsel for Mother, Father, and DCS to read the email. The cryptic email stated that Foster Parents had said to tell the judge they were "legally bound to disobey an unlawful order" and quoted them as saying, "He's worried about information getting to the media and it's decisions like this that get information to the media."[2] Mother's attorney

---

[1] Father has a significant criminal history as a juvenile in another state. The details of that history are a matter of public record. *California v. [D.S.]*, No. H020580, 2002 WL 31270258, (Cal. Ct. App. Oct. 11, 2002).

[2] Foster Parents dispute the characterization of their conversation with the court employee as threatening; they maintain they were attempting to determine the scope of the standard confidentiality admonishment and had no intention of violating any court orders.

expressed concern that Foster Parents would relay details about Father's past criminal history to the media because "that's what she's been doing to doctors to try to bolster her case" and asked that W be immediately removed from Foster Parents' care. Following a brief recess, counsel for DCS then advised the court that it had initiated an "emergent removal" from Foster Parents; Judge Padilla responded that he would "pre-approve" a change of placement order, and also continued the Rule 59 hearing. Without any notice to Foster Parents or following the procedures mandated in Arizona Revised Statutes ("A.R.S.") section 8-515.05, DCS removed W from Foster Parents and placed W in a different foster placement.

¶7        Foster Parents filed a motion to intervene in W's dependency case and requested an emergency hearing regarding the change in physical custody. At an expedited hearing, Commissioner Ash did not rule on the motion to intervene, but deferred consideration of the motion until January 14, 2020, the date to which Judge Padilla had continued Mother's Rule 59 hearing. Commissioner Ash also took no action on the request for change in physical custody. This special action followed.[3]

## ANALYSIS

### I.        Jurisdiction

¶8        An order related to a change of placement from one foster home to another that does not otherwise reaffirm the child's dependency status is not considered a final, appealable order. *Jewel C. v. Dep't of Child Safety*, 244 Ariz. 347, 350, ¶ 8 (App. 2018); *see* A.R.S. § 8-235(A); Ariz. R.P. Juv. Ct. 103(A). Because Foster Parents have no "equally plain, speedy, and adequate remedy by appeal," we accept special action jurisdiction as to the issues of exclusion from the December 13, 2019 hearing and W's removal from Foster Parents' care. *See* Ariz. R.P. Spec. Act. 1(a).

---

[3]        Following a telephonic hearing, we granted Foster Parents' request to stay the superior court proceedings, which included a scheduled hearing on the motion to intervene and the continued evidentiary hearing on Mother's Rule 59 motion. Because the superior court has not had an opportunity to conduct fact-finding and issue a decision whether to permit Foster Parents to intervene, that issue is not ripe, and in our discretion we decline to exercise jurisdiction over the still-pending motion to intervene. *Stapert v. Ariz. Bd. of Psychologist Examiners*, 210 Ariz. 177, 182 (App. 2005); *see Samaritan Health Sys. v. Superior Court*, 194 Ariz. 284, 294 (App. 1998).

*II.*     *Exclusion from Hearing*

**¶9**     We review a superior court's ruling on a discretionary matter for abuse of discretion. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 234, ¶ 13 (App. 2005). The superior court abuses its discretion when it makes decisions unsupported by facts or sound legal policy. *Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 9 (App. 1998).

**¶10**     Pursuant to A.R.S. § 8-525(A), court proceedings "relating to dependent children" are open to the public. The court may order any proceeding closed to the public "[f]or good cause shown." A.R.S. § 8-525(B); Ariz. R.P. Juv. Ct. 41(E). The statute also provides that "[i]n considering whether to close the proceeding to the public, the court shall consider"—among other factors—whether closing the proceeding is in the best interests of the child, whether an open proceeding would endanger the well-being of the child or another person, and the privacy rights of the child or the child's parents. A.R.S. § 8-525(B)(1)-(3).

**¶11**     Rule 37(B) designates a foster care placement as a "[p]articipant" in proceedings related to a dependent child. The court may limit the presence of a participant at a proceeding if doing so "is in the best interest of the child" or is "necessary to protect the privacy interests of the parties and will not be detrimental to the child." Ariz. R.P. Juv. Ct. 41(C). As participants, foster parents do not enjoy the same rights as parties; *see Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 50, ¶ 19 (App. 2013), however, foster parents have "the right to be heard in any proceeding to be held with respect to a child in foster care." Ariz. R.P. Juv. Ct. 41(I)(B).

**¶12**     At the December 13 hearing, Mother's attorney made an oral motion to "close the courtroom and to exclude [Foster Parents]" and cited the conduct of Foster Parents as alleged in the pending November 13 joint motion. Father's attorney supported the motion, but DCS and W's guardian *ad litem* opposed the motion. The superior court then excluded Foster Parents and testifying witnesses, but did not close the courtroom to the public, stating "I think we all know these are open proceedings." The superior court did not conduct any further inquiry, made no findings, and did not seek input or testimony from Foster Parents regarding the accusations leveled against them in the November 13 joint motion—accusations already flatly refuted by DCS in its written response.

**¶13**     We recognize that Rule 41(C) does not explicitly require findings on the record, and we may infer findings of fact sufficient to sustain the superior court's order "as long as those findings are reasonably

supported by the evidence." *Johnson*, 192 Ariz. at 489, ¶ 11. At no time, however, did Mother's attorney or Father's attorney cite to Rule 41(C), and the record provides little—if any—support that the superior court considered W's best interests pursuant to Rule 41(C)(1) or whether exclusion of Foster Parents would be detrimental to W pursuant to Rule 41(C)(2).[4] Further, the superior court's decision to exclude Foster Parents from the proceedings preempted their rights to be heard as provided in Rule 41(I)(B). On this record, we find the superior court abused its discretion in excluding Foster Parents from the courtroom without, at a minimum, first giving them an opportunity to be heard.

### III. DCS Removal of W from Foster Parents' Care

**¶14** If DCS intends to remove a child from a foster placement, DCS must, pursuant to A.R.S. § 8-515.05(A), inform the foster parent of its intent and provide "the specific reason for the child's planned removal" to a different foster placement. The statute, however, provides that such notice is not necessary under certain exceptions, including "to protect the child from harm or risk of harm." A.R.S. § 8-515.05(A). At no time did either Mother or Father, or the court, identify any immediate harm or risk of harm to W due to either Foster Parents' continued presence in the courtroom on December 13 or Foster Parents' continued custody of W pending the statutory procedures outlined in § 8-515.05.

**¶15** Pursuant to the statute, if no subsection (A) exception applies, and if the foster parents disagree with DCS' decision to remove the child, DCS must within seventy-two hours hold a case conference which includes the foster parents and two members of the foster care review board. A.R.S. § 8-515.05(B). Pending that case conference, the child is not to be removed from the current foster placement. A.R.S. § 8-515.05(C). Participants at the case conference review DCS' reasons for the proposed removal, and

---

[4] The only basis for removal alleged by Mother's counsel was the apprehension that Foster Parents would alert W's treating physicians and/or the media concerning Father's prior criminal conviction. As previously noted, that conviction—wherein a three-year-old minor was victimized—is a matter of public record. Further, an argument can certainly be made that to reduce a potential risk of harm to W arising out of Father's exercise of visitation, W's current treating physicians should at least be advised of the circumstances leading to Father's conviction so that on physical examination they can be alert to any objective indicia of abuse.

removal may only occur when and if a majority of the participating members of the conference agree to removal. A.R.S. § 8-515.05(B).

**¶16** In response to Foster Parents' petition, DCS argues that A.R.S. § 8-515.05 does not "address an independent juvenile court order removing a dependent child from a foster-care placement." Because Judge Padilla "essentially granted [Mother's and Father's] motion," DCS argues, A.R.S. § 8-515.05 does not apply. The record, however, does not support DCS' version of events. The record indicates that, after reviewing the email from court staff to Judge Padilla, DCS informed the superior court and parties that DCS would "facilitate an emergent removal" and that efforts had already been initiated to remove W from Foster Parents' care. Judge Padilla then told DCS that he would "pre-approve" the change in placement for W. There is no indication in the record that DCS acted upon an independent court order. Thus, the provisions of A.R.S. § 8-515.05 applied to the removal of W from placement with Foster Parents.

**¶17** DCS argues that even if A.R.S. § 8-515.05 applied, it was not required to inform Foster Parents of the removal because notice is not required when removal is "to protect the child from harm or risk of harm." A.R.S. § 8-515.05(A). As previously noted, neither parent alleged W was at any risk in the current foster placement, and the superior court made no findings that immediate removal was required for W's protection from any identifiable harm or risk of harm. On this record, there are simply no facts sufficient to support any inference of harm or risk of harm, let alone the explicit finding seemingly required by the statute. As such, we cannot find that failure to follow the A.R.S. § 8-515.05 procedure was warranted.

**¶18** The events on December 13, 2019 not only resulted in W's improper removal from Foster Parents, but denied Foster Parents the protection of the removal procedures identified in subsections (B) through (D) of § 8-515.05. At a minimum, this statutory mandate protects the dependent child from a disruptive relocation and ensures an identifiable procedure and due process for the foster placement pending final determination of the child's status.

## CONCLUSION

**¶19** We vacate the order emergently removing W from Foster Parents' care and remand the matter to the superior court to oversee DCS' immediate implementation of the A.R.S. § 8-515.05(A)–(D) process, as appropriate. In that regard, DCS should immediately provide Foster Parents the appropriate notice required by subsection (A), identifying the

"specific reason for the child's . . . removal from the licensed foster parent"; in other words, the specific harm or risk of harm, if any, to which W is exposed as a result of the Foster Parents' alleged actions.

¶20 Foster Parents request an order directing W's immediate return to their care and for the duration of the process outlined in A.R.S. § 8-515.05. Consistent with the tenor of that same statute—three times mandating that children remain in the current placement during the pendency of placement disputes—we deny that request. Consistent with the best interests of the child, W should remain in the current placement pending a majority vote of the members at the A.R.S. § 8-515.05 case conference or further order of the superior court.



AMY M. WOOD • Clerk of the Court
FILED: AA