NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANTHONY T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.T., *Appellees*.

No. 1 CA-JV 19-0369
FILED 6-2-2020

Appeal from the Superior Court in Mohave County
No.  S8015JD201900056
The Honorable Megan McCoy, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

E.M. Hale Law, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Chief Judge Peter B. Swann joined.

---

**T H U M M A**, Judge:

¶1 Anthony T. (Father) appeals from an order finding his child, B.T, dependent. Because Father has shown no error, the order is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2 Father, B.T. (born in late 2017) and the B.T.'s Mother all have had prior involvement with child protective services, both in Arizona and California. The couple have three children together, including B.T., and Mother has an older daughter, who lives with two of her siblings in California under a guardianship. Over time, there have been several investigations of reported abuse and substance-abuse involving parents and their children.

¶3 B.T. was born in Arizona substance-exposed to methamphetamine, and both parents tested positive for the drug shortly after his birth. Although a safety plan was implemented in Arizona, the three moved to California. California then filed a dependency action, B.T. was found dependent, parents successfully completed substance-abuse and other services and the case was dismissed in September 2018.

¶4 In February 2019, California received a report alleging that Father had sexually assaulted Mother's oldest daughter. Given financial reasons and apparent strife with extended family, parents and B.T. moved back to Arizona before California investigated the allegation.

¶5 In June 2019, the Arizona Department of Child Safety (DCS) received a hotline call about the sexual assault allegation as well as an allegation that Father was abusing alcohol. DCS found the parents at a family member's house in Mohave County. When contacted, both parents expressed frustration that DCS was again involved and refused to allow DCS inside the house, but did allow the DCS investigator to see B.T., who looked "healthy and happy." At the end of that interaction, the parents told DCS they would be moving the next day and would not disclose where they would be living next.

¶6        Given the hotline report, history and investigation, DCS sought (and obtained) a court-authorized removal order and B.T. was taken into care. DCS' dependency petition. As to Father, the petition alleged substance abuse (including an erroneous allegation that he had not participated in substance abuse services) and failing to provide a safe and proper home (alleging where the three had been staying had no running water or utilities).[1]

¶7        At a team decision-making meeting the day after DCS filed the petition, Father admitted the couple used marijuana while B.T. was sleeping, but there is no indication they had a valid medical marijuana card. DCS reported concerns that parents were again using methamphetamine and asked them to participate in drug testing. DCS requested a hair-follicle and urinalysis test, which neither provided at the time.

¶8        At the preliminary protective hearing, where Father contested the dependency allegations, the court ordered him to participate in random drug tests and a hair follicle test. Father did not provide a hair follicle sample and, at first, refused drug testing. Approximately two weeks later, however, Father provided a urine sample that came back negative. And although the parents had allowed DCS to view their residence, they moved before the dependency adjudication.

¶9        Mother and Father inconsistently attended supervised visits. Father's work schedule conflicted with some of the visits, but DCS reported that "neither parent has shown a willingness to fully commit to attending visits consistently." On one occasion, Father became agitated while in the DCS office for a visit, causing security to become involved and warning Father about his behavior.

¶10        The evidence at the October 2019 adjudication showed Father had not provided a hair follicle sample for testing, had provided one negative urinalysis test and refused to participate in any other testing. In addition, parents had moved and, although DCS had twice scheduled a visit of their new residence, parents had cancelled both visits. Accordingly, DCS had not been able to inspect their current residence to ensure B.T.'s safety if he was placed back in their care.

---

[1] The petition also claimed sexual abuse of Mother's oldest child, a ground later withdrawn by DCS before trial.

¶11        DCS argued, with supporting evidence, that B.T. was dependent based on an inability to ensure B.T.'s basic needs (including denying access to inspect parent's current residence) and substance abuse (including Father's refusal to participate in court-ordered testing). The guardian ad litem (GAL) stated that, if Father provided DCS access to inspect the residence and tested negative, the case would likely be quickly resolved by dismissal, but because that had not yet happened, the GAL supported the dependency. Father testified that he did not plan to let DCS view his residence because the situation was "wrong."

¶12        After considering the evidence and argument, the court found B.T. dependent as to both parents, stating it drew a negative inference, noting that:

> based on the lack of compliance by the parents, this Court has no information. This Court has no ongoing information about the home of these parents. This Court has no information as to their sobriety other than the testimony of the [F]ather, even though both have been Court ordered to submit hair follicles and both have been required and given the benefit of urinalysis testing.

¶13        Father timely appeals pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes (A.R.S.) §§ 8-235(A) and 12-120.21(A)(1) and Arizona Rules of Procedure for the Juvenile Court 103 and 104 (2020).[2]

**DISCUSSION**

¶14        Father argues that substantial evidence did not support the finding that B.T. was dependent as to him . This court reviews the evidence in a light most favorable to sustaining the superior court's findings, *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235 ¶ 21 (App. 2005), recognizing that court assesses credibility and is in the best position to weigh the evidence, *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). This court will "generally not disturb a dependency adjudication unless no reasonable evidence supports it." *Willie G.*, 211 Ariz. at 235 ¶ 21.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶15    DCS had the burden of proving by a preponderance of the evidence that B.T. was dependent as to Father. *See* A.R.S. § 8-844(C)(1). Father, however, has not shown the court erred in drawing a negative inference from his failure to submit to court-ordered drug testing in finding B.T. dependent as to him and in assessing his credibility. *Cf. Willie G.*, 211 Ariz. at 235–36 ¶¶ 21, 26. Similarly, parents' refusal to allow DCS to assess the safety of their current residence does not mean B.T. should not be in care. *Id.* at 235 ¶ 21.

¶16    Father argues that, because DCS relied on his previous methamphetamine abuse, the allegation of substance abuse was insufficient. Father also argues the neglect allegation was unsupported, because a finding of neglect requires a showing of some fact that the circumstances alleged create an "unreasonable risk of harm to a child's health or welfare." A.R.S. § 8-201(25)(a). Father also argues that the dependency finding was not in B.T.'s best interest, stating that "[b]ecause DCS was unable to show any evidence to support a claim that B.T. was neglected or that the situation he lived in was harmful, removal from the love and care of his parents is not in his best interest." In pressing these arguments, however, Father asks this court to reweigh the evidence presented at trial, something this court will not do on appeal. *Jesus M.*, 203 Ariz. at 282 ¶ 12.

¶17    The record at trial showed Father admitted using marijuana that, along with the concerns of alcohol abuse, justified the drug testing the court ordered and that he does not challenge on appeal. Other than providing one sample, which was negative, Father, however, failed to comply with that court-ordered testing. Similarly, parents have failed to allow DCS access to their current residence to assess whether it would be appropriate for B.T. By moving from one residence that DCS fairly described as not being appropriate to another residence where parents will not allow DCS access, nothing indicates that the concerns that caused DCS to take B.T. into care have been resolved. This is particularly true given parents' prior involvement with DCS in Arizona, and its counterpart in California. On this record, Father has not shown the dependency finding was in error.

## CONCLUSION

¶18     The order finding B.T. dependent as to Father is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA