NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE DEPENDENCY AS TO A.C. and H.C.

No. 1 CA-JV 22-0277

FILED 4-27-2023

---

Appeal from the Superior Court in Maricopa County
No. JD534927
The Honorable Ashley Halvorson, Judge

**AFFIRMED**

---

COUNSEL

Office of the Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which
Judge Michael J. Brown and Judge Michael S. Catlett joined.

---

**M c M U R D I E**, Judge:

**¶1**         Guadalupe V. ("Mother") appeals from the superior court's order adjudicating two of her children dependent. She argues that the adjudication was improper because she was not provided adequate services. We find no error and affirm the dependency.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**         Mother has two minor children: Amanda,[1] born in 2006, and Harvey, born in 2014. Mother also has another child, Delaney, who is an adult. Delaney and Henry C. ("Father")[2] are relevant to the facts but not parties to this appeal.

**¶3**         In June 2022, Delaney visited the family at their home, where she argued with Mother. Father confronted Delaney and engaged in a physical altercation. Reports from multiple family members revealed that Father dragged Delaney to the ground by her hair and repeatedly punched her in the face. Delaney responded by striking Father on the head with a glass candle holder. Other family members, including the minor children, tried to intervene, and Father injured Amanda during the struggle.

**¶4**         Mother denies this version of events. According to Mother, Delaney struck Father with the candle holder first. Then, while Mother tried to stop him**,** Father "tr[ied] to pull [Delaney] out of the house because she wasn't listening. She was being disrespectful." Mother testified that neither Amanda nor Harvey was injured during the incident. But Mother's version of the events conflicts with her earlier admission to the Department of Child Safety ("Department") that Amanda was injured because she "got in the way."

**¶5**         A few days after the event, the children's grandmother filed a dependency petition claiming that Mother and Father were unfit to parent. The grandmother alleged that Mother and Father were "using drugs in front of the kids," "mentally [unstable]," and "unable to provide basic needs of the children." The grandmother also claimed that "Father is violent" and that the "kids are both scared to be placed with [the] parents."

---

[1]         To protect the children's identities, we refer to them by pseudonyms.

[2]         Paternity has not been established but is not at issue.

**¶6**         Meanwhile, the Department received a report alleging abuse and sent an investigator to Mother's and Father's home. The investigator interviewed the children and the grandmother, who recounted the June altercation. Delaney and Amanda reported witnessing drug use and recounted other domestic violence instances in the home.

**¶7**         On July 1, the juvenile court held an initial dependency hearing and placed the children in temporary custody. Per the court's order, the Department filed a substitute dependency petition. The court ordered that the Department provide services for Mother and Father and parenting time "at the discretion of the children."

**¶8**         The juvenile court held a contested dependency trial in November. But because the children were uncomfortable with visitation, Mother had not visited with her children in the five months between the initial and the contested dependency hearings. Mother had sent letters to Harvey, but Amanda refused to receive letters. While the Department purportedly "offered" parenting classes, Mother had not yet been "referred" to them because they require supervised visits, and the children do not want to visit with Mother. The Department conceded that it had not provided individual domestic violence counseling, asserting that "Mother is to self-refer" and that she had not done so. Finally, the Department also admitted that it had not yet completed the recommended psychological evaluation of Mother, explaining that "there was a delay" because the consultant "wanted to see Mother's negative [drug tests]" and "was also trying to wait to see how letters were going . . . with the children" to "get more background information on Mother's mental health."

**¶9**         Father did not contest the dependency or attend the hearing, and the court entered a default judgment finding the children dependent as to him. Mother challenged a dependency finding, arguing that the Department had failed to provide services adequately. The court considered the availability of services and the parents' efforts to obtain and participate in those services as a mitigating factor. The juvenile court was not persuaded that the lack of services undermined the dependency petition. The juvenile court found that the Department had proven the allegations in the petition and adjudicated the children dependent as to Mother.

**¶10**         Mother appealed the dependency determination, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

**DISCUSSION**

**¶11** The juvenile court will adjudicate a child dependent if that child is "[i]n need of proper and effective parental care and control [with] no parent . . . willing to exercise or capable of exercising such care and control," "is not provided with the necessities of life, including adequate food, clothing, shelter or medical care," or is found in a home "unfit by reason of abuse, neglect, cruelty or depravity by a parent." A.R.S. § 8-201(15)(a)(i)–(iii). A dependency finding requires proof by a preponderance of the evidence. A.R.S. § 8-844(C)(1).

**¶12** We review a dependency adjudication for an abuse of discretion, deferring to the juvenile court's ability to weigh the evidence. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). Because the primary consideration is always the child's best interest, the juvenile court is provided "a great deal of discretion." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). We view the evidence in the light most favorable to sustaining the court's findings, and we will affirm the court's ruling unless no reasonable evidence supports the decision. *Id.*

**¶13** Mother does not contest the juvenile court's unfitness findings under A.R.S. § 8-201(15)(a)(i)–(iii). Instead, she claims that the Department failed to provide adequate rehabilitative services. Mother objects to the lack of visitation, parenting classes, and counseling services. Mother also claims that the Department arranged her psychological evaluation untimely. She argues that services must be provided "at the outset of a dependency action, long before the dependency trial." To support this claim, Mother cites statutes, procedural rules, and *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 177, ¶ 12 (App. 2014).

**¶14** But Mother's citations to the dependency statutes fail to establish that the juvenile court abused its discretion. First, A.R.S. § 8-824(H)(4) directs the Department to submit a report detailing "[t]he types of service needed to facilitate the return of the child to the custody of the child's parents or guardian." The Department submitted this report. Second, A.R.S. § 8-824(J)(1) requires the juvenile court to "[e]nter orders regarding . . . visitation, if any" at the initial hearing. The court's visitation order "at the discretion of the children" complies with the requirement, even if the children choose not to visit with Mother.

**¶15** Third, A.R.S. § 8-825(D)(1) directs the court to "order the [D]epartment to make reasonable efforts to provide services to the child and parent to facilitate the reunification of the family." The juvenile court found

"that the Department . . . has made reasonable efforts to prevent the removal of the children from the home . . . or that it was reasonable to make no efforts to maintain the children in the home." It ordered that Mother complete hair follicle testing and ordered the Foster Care Review Board to "determine what efforts have been made by the Department" every six months. It also stated that parents would receive "substance abuse treatment and testing, domestic violence counseling, family connections, and unit psychological consultation." The court's order complies with the statutory directive.

¶16        Finally, upon adjudication of dependency, A.R.S. § 8-846(A) requires that the court "order the [D]epartment to make reasonable efforts to provide services to the child and the child's parent." The court did so at the disposition hearing when it ordered that "[parenting classes], psychological evaluation, and individual counseling with a domestic violence component" would be offered to Mother as a part of the case plan. Mother's citations to the Arizona Rules of Procedure for Juvenile Court add no further obligation on the court beyond the statutory requirements. In sum, we find no error with the juvenile court's actions throughout the dependency proceedings.

¶17        We stand by our statement in *Shawanee S.* that "when a child is removed from the home, [the Department] is presumptively obligated to make reasonable efforts to 'provide services to the child and the child's parent.'" *Shawanee S.*, 234 Ariz. at 177, ¶ 12 (quoting A.R.S. § 8-846(A)). But *Shawanee S.* arose from a parental termination proceeding, not a dependency adjudication. *See id.* at 175, ¶ 1. The case does not support the proposition that inadequate services or reunification efforts render a *dependency* adjudication improper. Mother cites no case in which this court has vacated a *dependency* order because the Department failed to provide services.

¶18        Nor does Mother explain how the alleged failure to provide services undermines the validity of the dependency order. Mother argues, "[The Department] failed to provide sufficient rehabilitative services. Hence reasonable evidence does not support the dependency order." Mother's conclusion does not follow the premise. The Department's compliance with its obligation to offer rehabilitative services does not affect whether the juvenile court may find by a preponderance of the evidence that a child is dependent. *See* A.R.S. § 8-844(C)(1); *see also* A.R.S. § 8-201(15).

¶19        Instead, as the Department correctly identifies, the dependency statutes require that the juvenile court "take into consideration

5

as a mitigating factor the availability of reasonable services to the parent" and the parent's efforts "to obtain and participate in these services." A.R.S. § 8-844(B). And the juvenile court has done so.

**¶20** We agree with Mother that the right to raise one's children is a fundamental liberty interest protected by the federal and Arizona constitutions. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 8 (2021). We also agree that the Department must provide adequate rehabilitative services before terminating Mother's parental rights. *See Jessie D.*, 251 Ariz. at 581–82, ¶¶ 18–20; *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191–92, ¶ 32 (App. 1999).

**¶21** But Mother's request to vacate the dependency because the Department provided inadequate services is unfounded. Furthermore, the primary consideration of the dependency—the child's best interest—would not be served by the unwinding of the Department's case plan and court-ordered rehabilitative services. *See Willie G.*, 211 Ariz. at 235, ¶ 21. We thus conclude that the juvenile court did not abuse its discretion by adjudicating the children dependent as to Mother.

## CONCLUSION

**¶22** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA