NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

## IN RE DEPENDENCY AS TO A.B. AND A.B.

No. 1 CA-JV 23-0163
FILED 4-9-2024

---

Appeal from the Superior Court in La Paz County
No. S1500JD202200017
The Honorable Marcus A. Kelley, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1     Father appeals from a dependency ruling premised on findings of abuse and parental unfitness related to his children's mental health issues and care. *See* A.R.S. § 8-201(15)(a)(i)(iii). For the reasons below, we affirm the dependency but vacate the abuse finding.

## BACKGROUND

¶2     Amber and Aubrey[1] were born in 2008 and 2014, respectively, to a substance-abusing and reportedly mentally ill mother. Father and Mother (collectively, the Parents)[2] adopted the girls as young children and began raising them in Montana.

¶3     In 2018, when Amber was nine years old, the Parents enrolled her in counseling for escalating behavioral issues and, suspecting hereditary schizophrenia, they had her participate in a neurodevelopmental assessment. Amber was diagnosed with reactive attachment disorder, generalized anxiety disorder, persistent depressive disorder, and attention deficit hyperactivity disorder. The psychologist recommended that the Parents continue to provide counseling, implement specified positive parenting strategies, and share the evaluation with Amber's educators.

¶4     In 2020, the Parents lost their house in Montana and moved the family to a trailer in rural Arizona. They kept the children out of school for a year because of the COVID-19 pandemic. When the children began attending school in Fall 2021, Amber had many disciplinary problems. Among other things, she falsely accused other students of planning to bring a gun to school and of bullying. In a series of meetings with school administrators, the Parents provided a partial report from Amber's 2018 assessment (which they never supplemented despite knowing it was

---

[1]     We use pseudonyms for the minors and witnesses.
[2]     Mother is not a party to this appeal.

incomplete) and they stated that they were trying to find her a counselor. The Parents also tried to get Amber an individualized education plan, but she did not qualify. Ultimately, on the school's referral, Amber began attending in-school counseling in December 2021.

¶5        In February 2022, the Department of Child Safety investigated a report of Mother physically abusing Amber. Around the same time, Amber began impersonating Father online, sending untruthful messages to a teacher and asking the teacher to adopt her. When the school discovered this, Amber was placed on long-term suspension through the end of the semester. The superintendent recommended she receive a full psychological evaluation and more intensive therapy before the start of the next school year.

¶6        In July 2022, the Parents had both Amber and Aubrey participate in psychiatric assessments at a walk-in clinic. The Parents told the psychiatrist about Amber's lying and described Aubrey as oppositional and hyperactive, with a problematic habit of putting non-food items in her mouth. The psychiatrist suggested that Aubrey might benefit from a trial of medication for hyperactivity, and the Parents said that they would discuss the idea. The Parents continued to facilitate counseling for both children at the walk-in clinic, and when school started, Amber resumed and Aubrey began in-school counseling as well.

¶7        In August 2022, the Department learned that Amber had asked a friend's family to let her live with them because she was being abused and neglected at home. The next month, Amber made additional accusations of physical abuse by Mother.

¶8        The Parents spoke with a Department investigator and told her about Amber's history of lying and behavioral problems; Mother stated that if Amber's behaviors continued, she would want to send her to a psychiatric facility or group home. The Parents also reported that Aubrey was starting to follow Amber's behaviors and suffered from meltdowns and an inability to sit still. The Parents threatened the children that they would go to foster care if their behaviors did not stop.

¶9        In November 2022, Amber told a friend that she was going to run away from home. A few days later, Mother called the Department investigator to report that she could no longer handle Amber's escalating misbehaviors and that she was looking into having Amber stay with Mother's adult daughter, Kayla.

¶10        The next day, the Parents took Amber and Aubrey to appointments at the walk-in clinic. At Aubrey's appointment, Father told the psychiatrist that she was still oppositional and hyperactive, and he and Mother said they could not handle her. The psychiatrist prescribed medication for oppositional defiant disorder. Amber then had her appointment, during which she accused Father of sexually abusing both her and Aubrey. Law enforcement immediately responded to the clinic, and the children were placed in Kayla's care under a present danger plan. Later, both children were removed from Kayla's home in short order (Amber in December 2022 and Aubrey in February 2023) because Kayla could not manage their behaviors: Amber was lying and had gone downtown without permission, and Aubrey was hyperactive, incontinent, unhygienic, and would act out after virtual visits with Mother.

¶11        In forensic interviews, the children described sexual abuse by Father and physical abuse by Mother. Mother largely denied the allegations but admitted that she disciplined the children by making them stand in a corner for up to 15 minutes (sometimes restarting Aubrey's time when she would not stay put), and by spanking them with a flyswatter as a last resort. Mother also admitted that she once tried to put soap in Amber's mouth as punishment.

¶12        In December 2022, the Department filed a dependency petition regarding both children based on Father's alleged sexual abuse (which was also criminally charged) and Mother's failure to protect the children from that abuse. *See* A.R.S. § 8-201(15)(a)(iii). The Parents entered a denial, and the matter proceeded to a four-day dependency trial in the juvenile court starting in April and ending in June 2023.

¶13        Near the end of the third day of trial, at Father's prompting, the Department moved to amend the petition to add new dependency theories related to the Parents' management of the children's mental health issues. The court granted that motion. The Department then filed an amended petition alleging that the Parents' home was "unfit by reason of abuse or failure to protect from abuse, medical/mental health," *see* A.R.S. § 8-201(15)(a)(iii), and that the Parents were "unwilling or unable to provide proper and effective parental control due to the child's behaviors," *see* A.R.S. § 8-201(15)(a)(i).

¶14        In closing argument, both Father and Mother conceded that Amber was dependent because her severe mental health issues rendered them unable to provide effective parental care. Father argued, however,

4

that the Parents had tried to help both children and that declining to medicate Aubrey was actually commendable.

¶15        The court found insufficient evidence of sexual abuse but found both children dependent on the grounds added by the amendment. Father appealed.

## DISCUSSION

### I.      Jurisdiction

¶16        Father first argues that, as to Aubrey, the dependency order is void for lack of jurisdiction because the court relied on allegations that made no reference to her.

¶17        We review jurisdictional questions de novo. *David S. v. Audilio S.*, 201 Ariz. 134, 136, ¶ 4 (App. 2001). The court's jurisdiction in a dependency matter is invoked at the outset of the case, *id.* at ¶ 7, by a petition that states the essential facts to show a minor's dependency, *In re Pima Cnty. Juv. Dependency Act. No. 97247*, 158 Ariz. 55, 57 (App. 1988). Here, the Department's initial petition alleged that both children were dependent under A.R.S. § 8-201(15)(a)(iii) based on abuse or failure to protect from abuse. That conferred jurisdiction.

¶18        The petition was then properly amended to conform to the evidence at trial to add allegations of dependency based on the children's mental health issues and care under A.R.S. § 8-201(15)(a)(i) and (iii). *See* Ariz. R.P. Juv. Ct. 338(g) (providing that dependency petitions may be amended to conform to the evidence "during or after the presentation of evidence pursuant to Civil Rule 15(b)"). Leave to amend to conform to the evidence should be liberally granted absent prejudice, *Bujanda v. Montgomery Ward & Co.*, 125 Ariz. 314, 316 (App. 1980), such as the deprivation of an opportunity to factually challenge a new dependency theory, *see Carolina H. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 569, 572, ¶ 12 (App. 2013). When the nonmovant expressly or impliedly consents to amendment, the movant is entitled to amendment as a matter of right. *Bujanda*, 125 Ariz. at 315–16.

¶19        Here, it was Father himself who asked that the petition be amended to allege that the Parents were unable to manage the children, and he made no showing of prejudice regarding the specific amendments made. Though the new allegations mentioned only Amber by name, they were made beneath an umbrella allegation of "abuse and/or neglect" of both children. Additionally, the trial transcript confirms that all of the parties

knew that the new allegations would apply to, as Father repeatedly put it, "the kids." And at the close of evidence, all of the parties presented argument addressing all of the alleged dependency grounds with respect to both children.

**¶20** For these reasons, the juvenile court did not err by assessing Aubrey's as well as Amber's dependency under all three grounds alleged in the amended petition.

## II. Dependency Grounds

**¶21** Father next contends that the court's dependency determinations were unsupported by the evidence and the court's findings. Dependency must be established by a preponderance of the evidence. A.R.S. § 8-844(C)(1). The juvenile court has considerable discretion in dependency matters because the primary consideration is the child's best interests. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). We review a dependency ruling for abuse of discretion, accepting the juvenile court's findings of fact unless clearly erroneous and affirming the ruling unless it is supported by no reasonable evidence. *Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527, ¶ 9 (App. 2018).

**¶22** On this record, we confine our review to the written finding that Father was unwilling or unable to provide proper and effective parental care and control because of the children's behaviors.[3] A child is

---

[3] We do not assume that the court found neglect as a ground for dependency because though the court referenced "negligen[ce]" in its oral findings about unfitness, its written findings were confined to abuse. *See* A.R.S. § 8-844(C)(1)(a)(ii) (requiring findings on dependency's factual bases); Ariz. R.P. Juv. Ct. 338(h) (requiring findings to be set forth in signed minute entry or order); *see also Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 295–97, ¶¶ 12–14, 17 (App. 2020) (describing purpose of written findings requirement and prohibiting reliance on oral findings absent waiver). As to the abuse finding, after we issued our initial memorandum decision, Father filed a motion seeking clarification that the evidence was not sufficient to support the finding that he abused his children. DCS's response to that motion (filed pursuant to our order) expressed procedural concerns about Father's motion but offered no substantive opposition to the relief requested. There was no evidence that the Parents' management of either child's mental health needs led the children to experience physical injury, bodily impairment, disfigurement, or diagnosed emotional damage

dependent if she is "[i]n need of proper and effective parental care and control and . . . has no parent or guardian willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i). Father conceded that he was unable to properly care for Amber due to her mental health issues, but he argues that the same is not true about Aubrey because her issues are less severe.

¶23 To be sure, Aubrey's problem behaviors have not been as extreme as Amber's. But her mental health challenges are not insignificant. The Parents reported that Aubrey had myriad behavioral issues, and she was prescribed medication as a result. Though the Parents' decision to decline medication in favor of counseling was not inherently unreasonable, they failed to escalate Aubrey's care after months of counseling proved ineffective. And evidence showed that Aubrey needed some form of different or additional intervention—her behaviors were so serious that the Parents threatened her with foster care, Father reported being unable to handle her, and Kayla requested her removal only months after taking her in.

¶24 Further, the court could examine the Parents' ability to parent Aubrey given the care they provided to Amber, another mentally ill child whose behaviors they claimed Aubrey was starting to follow. *See In re Pima Cnty. Juv. Act. No. 96290*, 162 Ariz. 601, 604–05 (App. 1990) (explaining that state may proactively protect children where home conditions created dependency as to other children). Evidence showed that the Parents failed to meet Amber's mental health needs. Though the Parents attempted to provide Amber mental health care, those efforts were not robust, and they did not seek additional services as her condition deteriorated. Evidence showed (contrary to Mother's contention) that as early as 2018, the Parents knew that Amber had serious mental disorders and had been provided recommendations for her care. But they failed to follow those recommendations. Specifically, they gave incomplete information to Amber's school, and they provided her no counseling in Arizona until the school offered it. Further, the Parents did not seek private counseling until the Department became involved and the school recommended further interventions. They also resorted to disciplining both children with spankings, prolonged time-outs, and threats of being placed in foster care despite a mental health professional advocating the use of positive

---

consistent with the definition of abuse set forth in A.R.S. § 8-201(2). Thus, we vacate the superior court's finding that Father abused the children. In doing so, however, we note that the dependency finding remains in place as indicated in this decision.

parenting strategies. On this record, it is reasonable to conclude that Father's failure to appropriately manage Amber's mental health needs meant that he was unwilling or unable to meet Aubrey's needs as well.

¶25    Given all the foregoing, Father has not shown that the juvenile court abused its discretion by finding Aubrey dependent as to him based on unwillingness or inability to provide proper and effective parental care and control.

## CONCLUSION

¶26    We affirm the dependency ruling except as to the abuse finding, which we vacate.



AMY M. WOOD • Clerk of the Court
FILED:    AA