NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

WILLIAM B.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, B.B.,
*Appellees.*

No. 1 CA-JV 22-0078
FILED 11-8-2022

Appeal from the Superior Court in Maricopa County
No. JD524480
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**M O R S E**, Judge:

¶1          William B. ("Father") appeals the superior court's dependency and disposition orders. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Father is the legal parent of B.B. ("Child"), born in 2004. Child's biological parents are not parties to this appeal.

¶3          Child was born substance-exposed to marijuana. To avoid placing Child in the foster-care system, Father has cared for Child from birth. Initially, Father and Child lived with Child's great-grandmother, great-grandfather, and great-aunt.

¶4          In 2010, the family court granted Child's biological mother's request for Father to have sole custody of Child. Subsequently, Father got married and Child lived with Father, Father's wife, and Father's daughter. Later, Father acceded to great-grandmother's request that Child live with her. Child then went to live with his aunt and uncle. In 2020, Child returned to Father's home after the aunt and uncle reported that Child hit their minor daughter.

¶5          In December 2021, Father learned that Child had allegedly sexually assaulted his minor cousin in 2019 while living with his aunt and uncle. Father then contacted the Department of Child Safety ("DCS") to remove Child from Father's home. Father insisted that DCS remove Child from his home and told the DCS investigator that he believed Child posed a risk to the other minor children living in Father's home and no relative was willing to care for Child at the time. The court ordered Child into temporary out-of-home care and DCS placed Child in an independent-living group home.

¶6          Shortly after, DCS filed a dependency petition alleging Father (1) neglected Child due to his inability or unwillingness to provide Child with supervision, food, clothing, shelter, or medical care, which placed

Child in an unreasonable risk of harm; and (2) was unwilling or unable to provide proper and effective parental care. At the pretrial conference hearing, Father contested the allegations of the dependency petition and the court ordered Child into his great-aunt's care.

¶7 At the March 2022 dependency hearing, Father requested that the court find Child dependent on the inability-to-parent ground but contested the neglect ground. After adjudicating Child dependent, the court held a disposition hearing and ordered a case plan of supervised independent living.

¶8 In July 2022, a week before Child's eighteenth birthday, the court dismissed the dependency action and affirmed the case plan of independent living. While living with his great-aunt and shortly after his eighteenth birthday, Child executed a voluntary agreement under A.R.S. § 8-521.02(3) to participate in the extended foster care program.

¶9 Father timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶10 We review a dependency order for an abuse of discretion, *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015), and view the evidence in the light most favorable to upholding the court's order, *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). Because trial courts are "in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we will affirm an order if reasonable evidence supports it, *Willie G.*, 211 Ariz. at 235, ¶ 21. DCS bears the burden of proving the allegations of a dependency petition by a preponderance of the evidence. A.R.S. § 8-844(C)(1); *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016). Moreover, the circumstances that indicate dependency must be present at the time of the adjudication. *Shella H.*, 239 Ariz. at 50, ¶ 12.

¶11 We note that the dismissal of the dependency petition does not render Father's appeal moot. *See* A.R.S. § 8-804(A), (G) (requiring DCS to maintain a central registry of "substantiated" reports of child neglect—dependency based on an allegation of neglect is a substantiated report that must be maintained for a maximum of 25 years); *see, e.g., Bradley T. v. Dep't of Child Safety*, 1 CA-JV 20-0036, 2020 WL 3970994, at *1, ¶ 5 n.4 (Ariz. App. July 14, 2020) (mem. decision) (considering the merits of an appeal based on a dependency finding of neglect despite the child turning 18).

## I.     Neglect Ground.

**¶12**        We reject Father's argument that reasonable evidence does not support the court's order adjudicating Child dependent on the neglect ground.  We will affirm an order unless no reasonable evidence supports the court's findings.  *Willie G.*, 211 Ariz. at 235, ¶ 21.

**¶13**        A child is dependent if his home is unfit due to neglect by a parent.  A.R.S. § 8-201(15)(a)(iii).  Neglect means the "inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare."  A.R.S. § 8-201(25)(a)(2019).  Moreover, a dependency adjudication must be "based upon the circumstances existing at the time of the adjudication hearing" and "not merely on past circumstances."  *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 300, ¶ 35 (App. 2020) (quoting *Shella H.*, 239 Ariz. at 50, ¶ 12).

**¶14**        At the dependency hearing, the court heard evidence that (1) Father did not know the learning disability Child had been diagnosed with and the services that Child received under Child's individualized education plan ("IEP"), (2) Father had not taken Child to a dentist in the year and a half Child lived with Father, (3) Father had not taken Child to a doctor while Child lived with Father despite Child requiring an inhaler, (4) Father did not seek out professional counseling for Child when Child expressed that he "felt like self-harming," and (5) Father had not visited or attempted to visit Child since his removal in December 2021.  Thus, based upon the circumstances that existed at the time of the adjudication hearing, reasonable evidence supports the court's finding that Father neglected Child due to Father's inability or unwillingness to provide Child with supervision and medical care.  *See* A.R.S. § 8-201(25)(a) (defining neglect).

**¶15**        Moreover, Father's inability or unwillingness caused unreasonable risks of harm to Child's health or welfare.  *See* A.R.S. § 8-201(25)(a).  The court heard evidence that Child required extensive dental care after he was removed from Father's care, and Father did not arrange counseling when Child told Father he thought about hurting himself.  In addition, the DCS investigator testified about Child's developmental shortcomings, struggles in school, and Father's belief that Child was lazy even though Child required an IEP.

**¶16**        The burden of proof to establish a dependency is less than required for termination of parental rights.  *See* A.R.S. § 8-537(B) (requiring

4

clear and convincing evidence for termination proceedings). The record contains reasonable evidence to support the court's findings. *See Willie G.*, 211 Ariz. at 235, ¶ 21 ("On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings."); *Oscar O.*, 209 Ariz. at 334, ¶ 4 ("A juvenile court as the trier of fact in a termination proceeding is in the best position to weigh the evidence . . . .").

## II. Inability-to-Parent Ground.

**¶17** We also reject Father's argument that the court did not make sufficient findings of fact to support the inability-to-parent ground. When courts find DCS has proven the allegations in a dependency petition by a preponderance of the evidence, they must "state specific facts that support a finding of dependency." Ariz. R.P. Juv. Ct. 338(h)(4). A court's finding must include all the "ultimate facts," but it need not list "*each* fact that supports its ruling." *Francine C.*, 249 Ariz. at 296, ¶ 14 (citations omitted). "[U]ltimate facts are *at least* the essential and determinative facts on which the conclusion was reached. They are the controlling facts, without which the court cannot correctly apply the law in resolving the disputed issues in the case." *Id.* (quoting *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 537, ¶ 15 (App. 2018)). "We review the sufficiency of findings of fact *de novo* as a mixed question of fact and law." *Id.*

**¶18** Here, the court found DCS had proven by a preponderance of the evidence that Child is dependent as to Father on the grounds that Father is unable or unwilling to provide the child with proper and effective parental care and control. *See* A.R.S. § 8-201(15)(a)(i) (defining dependency on the inability-to-parent ground). The court adjudicated Child dependent by finding "Father refuse[d] to have the child back in his home due to allegations of inappropriate conduct by the child." There is no dispute that Father asked the court to find Child dependent on the inability-to-parent ground. Because the court's finding of fact is sufficient, the court did not abuse its discretion. *Louis C.*, 237 Ariz. at 488, ¶ 12.

## CONCLUSION

**¶19** We affirm the dependency. We also note that Child has voluntarily agreed to participate in DCS's extended foster care program. *See* A.R.S. § 8-521.02(A)(1) (qualifying young adults must "have been in the custody of [DCS] as a dependent child" when they turned 18). Because the extended foster care program is consistent with the court's disposition

order of supervised independent living, we affirm the court's disposition order.



AMY M. WOOD • Clerk of the Court
FILED: AA